L. BERRY ET AL V. CITY OF FORT WORTH ET AL.

No. 7363. Decided February 15, 1939.
Rehearing overruled March 29, 1939.
(124 S. W., 2d Series, 842.)

Slay & Simon, of Fort Worth, Powell, Wirtz, Rauhut & Gideon, of Austin, for plaintiffs in error.

It was error for the court to hold that the ordinance in question is not in violation of the Constitution because said ordinance is not a reasonable exercise of police power of the City of Fort Worth and is not for the protection of the health, safety, morals, or general welfare of the community, and is therefore unjust and unreasonable. Airway Elec. App. Corp. v. Day 266 U. S. 71, 45 Sup. Ct. Rep., 12; Mims v. City of Fort Worth, 61 S. W. (2d) 539; State v. Shippers Compress & Warehouse Co., 95 Texas 603, 69 S. W. 58.

It was error for the court to hold that said ordinance was valid and that that provision of the ordinance which provided for the appointment of an agent for service was not in conflict with Article 2026 R. S. Genusa v. City of Houston, 10 S. W. (2d) 772; Penoyer v. Neff, 95 U. S. 565; 30 Texas Jur. 302.

R. E. Rouer, George C. Kemble and R. B. Young, Jr., all of Fort Worth, for defendants in error.

The ordinance does not attempt to change the existing law relative to service of process, but only requires that in the event a person desires to conduct this line of business he shall designate some one as his agent who resides in the City of Fort Worth, for this purpose, and the ordinance should be upheld. Henry L. Doherty & Co. v. Goodman, 294 U. S. 623, 55 Sup. Ct. 553; Juhan v. State, 216 S. W. 873; Hubbard v. State, 4 S. W. (2d) 971.

City had a right to regulate personal loan companies, and courts will not interfere with reasonable regulation unless same interfere with property or personal rights of citizens unnecessarily and arbitrarily. Ex parte Ferguson, 15 S. W. (2d) 650;

Wessell v. Timberlake, 116 N. E. 43; Whitney v. People of California, 274 U. S. 357, 47 Sup. Ct. 641.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This suit was instituted in the 48th District Court of Tarrant County, Texas, by L. Berry and some sixteen others to restrain the City of Fort Worth, its officers, and agents from enforcing an ordinance of such city, which will later be set forth in full. The district court granted a temporary injunction, but on final hearing same was dissolved, and all relief denied Berry et al. Berry et al. appealed to the Court of Civil Appeals at Fort Worth. Upon final hearing in that court the judgment of the district court was affirmed. 110 S. W. (2d) 95. The case is before this Court on writ of error granted on application of Berry et al. The ordinance under attack reads as follows:

"Ordinance No. 1937.

"An ordinance regulating and licensing certain persons, firms and corporations engaged in the business of lending money without security within the corporate limits of the City of Fort Worth; excepting certain persons, firms and corporations; providing for the inspection and supervision of such persons, firms and corporations and their businesses; providing for the issuance, display and revocation of licenses; prescribing a bond; providing for the designation of an agent upon whom service may be had; prescribing a license fee; prohibiting the use of artifice or subterfuge; prohibiting communications with intent to harass or annoy; prohibiting communications to collect usury; providing for the keeping and inspection of records; providing for the repeal of all ordinances or parts of ordinances in conflict herewith; providing that the invalidity of a part of this ordinance shall in no way affect the remaining ones; providing a penalty for the violation of any of its provisions; and prescribing the effective date of this ordinance.

"Whereas, persons, firms and corporations are engaged in the business of lending money without security and are demanding and receiving exorbitant and unconscionable rates of interest, in violation of the State law, and such persons, firms and corporations so engaged in the business of lending money, in an attempt to obtain payment of the moneys so loaned, do wilfully and maliciously annoy the employers of their borrowers by continuous telephone calls to the annoyance and harassment of the employers and their employees in the ordinary course of business, and generally affects the public interest, all

of which requires strict supervision and inspection of such money-lending business; and

"Whereas, it is deemed expedient and in the interest of the public welfare to regulate and inspect such persons, firms and corporations engaged in the business of lending money without security; Now, therefore,

"Be it ordained by the City Council of the City of Fort Worth, Texas.

## "SECTION 1.

"It shall hereafter be unlawful for any person, firm, or corporation, either as principal or as agent or representative of another to engage in the business of lending money to individuals without security, within the corporate limits of the City of Fort Worth, Texas, without first having obtained a license therefor and displaying the same as provided herein. The fact that the lender may require a surety guarantor or indorser shall not exempt the lender from the provisions of this ordinance.

## "SECTION 2.

"Every person, firm or corporation, before opening, maintaining and/or operating such a business for the lending of money in the City of Fort Worth, shall make an application for a license for each such business maintained or operated by him, upon a blank to be furnished by the City Secretary, on a form prescribed by such officer, which shall include among other things the full name and address of the applicant, both residence and place of business, including the street and number; and if applicant is a partnership or association, of every member thereof, and if a corporation, of each officer or director thereof; also the name under which the business is to be conducted. In the application for license, the applicant shall also designate, name, appoint and maintain an agent in the City of Fort Worth upon whom service may be had in the event of any suit filed against such applicant in any action arising from a violation of this ordinance, and for the recovery of damages for the charging of a usurious rate of interest prohibited by law. In the event a change is made in the residence or address of the agent, all information about such change shall be furnished promptly to the City Secretary including the name and address of the substituted agent in the event the prior agent shall have moved outside of the City of Fort Worth. A separate license and application shall be required for each establishment, office or place of business conducting the business of lending money without security, regardless of the own-

ership of such business. Such application for license shall be sworn to by the applicant.

### "SECTION 3.

"Such license shall state the address at which the business is to be conducted and the name under which the business is to be conducted, and such license shall be kept conspicuously posted in the place of business of the licensee where it may be readily available for inspection by the public.

### "SECTION 4.

"Licenses shall not be transferable or assignable, but shall be valid only for the use of the licensee named therein; nor shall any licensee maintain more than one place of business under the same license, but the City Secretary may issue more than one license to the same licensee upon compliance with all the provisions of this ordinance governing an original issuance of a license for each new license.

### "SECTION 5.

"Such license shall be valid only at the address stated in said license; provided, however, that should a licensee desire to change his place of business to another location, he shall give written notice thereof to the City Secretary who shall attach to the license, in writing, his record of the change and the date thereof, which shall be authority for the operation of such business under such license at such new location.

### "SECTION 6.

"After having filed said application and bond with the City Secretary and secured said license as herein provided for, the licensee shall pay to the Assessor and Collector of Taxes the sum of Fifteen Dollars ($15.00) as an annual license fee.

### "SECTION 7.

"That before any license shall be issued as herein provided, the applicant shall furnish in writing a good and sufficient bond in the sum of One Thousand Dollars ($1,000.00) to be approved by the City Manager. Such bond shall be conditioned that the holder of the license shall well and truly pay to the Mayor of the City of Fort Worth or his successors in office, in Fort Worth, Tarrant County, Texas, any final judgment that may be rendered against such licensee not to exceed the amount of said bond, for the benefit of every person who may recover a final judgment against the licensee, arising and growing out of the conduct of the business licensed under this ordinance; and further conditioned that any person having a cause of action against the obligor of said bond arising and growing out of the conduct of the business licensed under this ordinance may sue in his own name and recover on said bond without the joinder

of the City of Fort Worth or the Mayor of the City of Fort Worth therein; and further conditioned that such person or persons may sue and recover upon said bond from time to time until the full amount is exhausted. Whenever recovery has been had on said bond so that the same is depleted or exhausted, the licensee shall immediately file a new or additional bond as herein provided for the original bond so as to maintain at all times a good and sufficient bond in the full amount of One Thousand Dollars ($1,000.00).

## "SECTION 8.

"It shall be unlawful for any licensee hereunder by the use of any artifice or subterfuge to demand or receive any greater rate of principal or interest than is provided for in the contract.

## "SECTION 9.

"It shall be unlawful for any licensee hereunder, his agents, servants or employes, to communicate with the employer of any borrower relating to any loan made by the licensee to the borrower, with intent to harass or annoy the employer of the borrower.

## "SECTION 10.

"It shall be unlawful for any licensee hereunder to communicate with any person other than the borrower in an effort to collect any debt growing out of business conducted by such licensee under such license, which debt is made up in whole or in part of usurious interest.

## "SECTION 11.

"Each licensee hereunder shall keep a complete set of records showing a list of loans made, giving the name and address of the borrower or borrowers, the amount of cash actually lent and the amount of principal and interest the borrower agreed to pay, whether such transaction was an original lending or a renewal of an existing loan, the amount of money paid to the licensee by the borrower and how the same was credited; that such books and records shall at all reasonable times during business hours be subject to inspection by the City Secretary of the City of Fort Worth and his duly authorized agents.

## "SECTION 12.

"Any license herein granted shall be subject to revocation by the City Council of the City of Fort Worth after due notice to the holder of such license and hearing thereon, upon proof of the violation of any of the provisions of this ordinance.

## "SECTION 13.

"Any person, firm or corporation who shall violate any of the provisions of this ordinance shall, upon conviction thereof, be fined in any sum not to exceed Two Hundred Dollars

($200.00), and each day's operation without a license as herein provided for shall be considered a separate offense.

"SECTION 14.

"This ordinance shall not apply to any person, co-partnership, association or corporation doing business under and as permitted by the laws of this State or the United States, relating to banks, savings banks, trust companies, building and loan companies, Morris Plan Banks, licensed credit unions, licensed rural credit unions, agricultural and livestock pools and farmers' co-operative societies.

"SECTION 15.

"If any clause, sentence, section, provision or part of this ordinance shall be adjudged to be unconstitutional or invalid for any reason by any court of competent jurisdiction, such judgment shall not impair, affect or invalidate the remainder of this ordinance, which shall remain in full force and effect thereafter.

"SECTION 16.

"All ordinances and parts of ordinances in conflict with the provisions of this ordinance are hereby expressly repealed.

"SECTION 17.

"This ordinance shall become effective and be in full force and effect from and after the date of its passage and publication as required by law."

It appears from the record before us that the ordinance above set out has been duly passed by the City of Fort Worth; that if valid it is now in full force and effect, and that Berry et al. are in position to prosecute this suit. In other words, under the record before us, we are simply called upon to dedetermine whether or not this ordinance is valid.

■ As we understand this record, the City of Fort Worth is what is commonly designated as a "Home Rule City," and operates as such under a charter. By express provisions of our constitutional and statutory laws, no ordinance of a city operating under a home rule charter can contain any provision inconsistent with our Constitution, or the general laws of this State. Section 5, Article XI, Texas Constitution; Article 1165, R. C. S. 1925; 30 Texas Jur., p. 301 et seq., and notes. Berry et al, contend that this ordinance violates the above constitutional and statutory provisions in many particulars. We think there is no escape from the conclusion that such is the case.

Section 1 of this ordinance makes it unlawful for any person, firm, or corporation to engage in the business of lending money to individuals without security within the corporate

limits of Fort Worth without first having obtained a license therefor, and displaying the same as in such ordinance pro· vided. Section 2 compels every person, firm, or corporation "before opening, maintaining, and/or operating" the business above named to make application for a license upon a blank to be furnished by the City Secretary, and on a form to be prescribed by such officer. Among other things prescribed, it is required that in such application the applicant, whether a person, firm, or corporation, shall "designate, name, appoint, and maintain an agent in the City of Fort Worth upon whom service may be had in the event of any suit filed against such applicant in any action arising from a violation of this ordi· nance," etc. By the terms of Section 13 of this ordinance any person who violates any of its provisions is guilty of a penal offense, and is subject to a fine not to exceed $200.00. Each day of violation is made a separate offense.

■ By numerous statutory provisions our general laws cover every kind and character of service of process on every kind and character of defendant in every kind and character of civil action in the courts of this State. By the express provisions of Article 2050, R. C. S. 1925, in no case can a judgment be rendered against any defendant unless upon service, or acceptance of service, or waiver of process, or upon an appearance by the defendant as prescribed by the chapter in which such article appears, except where otherwise expressly provided by law. The provisions of this ordinance which attempt to compel persons, firms, and corporations engaging in the business of lending money without security to appoint and maintain an agent for the purpose of service are inconsistent with our numerous service or process statutes; and furthermore such provisions are absolutely antagonistic to Article 2050, supra.

3  Section 2 of this ordinance attempts to define and provide the way and manner by which service or process may be had on persons, firms, and corporations in civil actions arising out of the violation of the same. It is by the service of process, or by waiver, appearance, etc., that our courts obtain jurisdiction over the persons of defendants in civil actions. It certainly does not lie within the power or jurisdiction of a city government, home rule or otherwise, to define how the civil courts of this State shall obtain jurisdiction over the persons of defendants in civil actions instituted therein.

Our Constitution, Section 11 of Article XVI, reads as follows:

"Sec. 11. All contracts for a greater rate of interest than ten per centum per annum, shall be deemed usurious, and the first Legislature after this amendment is adopted, shall provide appropriate pains and penalties to prevent the same; but when no rate of interest is agreed upon, the rate shall not exceed six per centum per annum."

■ It is too plain to admit of discussion that under the above constitutional provision the power to provide pains and penalties for usury is lodged exclusively in the Legislature. It therefore does not lie within the power of a city government to provide pains and penalties in regard thereto. It must follow that the provisions of this ordinance which attempt to provide pains and penalties for usury violate the above constitutional provision.

Our statutes, Article 5073, R. C. S. 1925, provide that within two years after the time that a greater rate of interest than ten per cent, shall have been received or collected upon any contract, the person paying the same, or his legal representative, may by an action for debt recover double the amount of such interest from the person receiving the same. It is then provided that such action shall be instituted in any court of this State having jurisdiction thereof, etc. It is plain that the Legislature, by enacting Article 5073, has provided the pains and penalties for usury, and it does not lie within the power of a city government to directly, or indirectly, provide a different or additional penalty. Also, by the terms of this Article the Legislature has provided the remedy, and it does not lie within the power of a city government to provide a different remedy.

Section 10 of this ordinance makes it unlawful for any person engaged in the business of lending money without security in the City of Fort Worth to communicate with any person other than the borrower in an effort to collect any debt growing out of the business conducted by such licensee, which debt is made up in whole, or in part, or usurious interest. Under the express terms of Article 5071, R. C. S. 1925, the principal sum of money or value of the contract is made a legal and valid debt, even if such contract provides for usurious interest. If the principal debt is legal and valid, the holder has the same rights in regard thereto as the holder of any other valid debt. This is necessarily implied from the fact that the statute expressly makes the principal part of the debt valid. This ordinance attempts to impair such rights and render even the principal of said debt practically impossible of forced collection. This is true because the holder could not even employ an attorney to collect

such debt, or even sue thereon. If he did either, he would be compelled to communicate with a person other than the borrower in regard to the debt. Also, the lender could not employ an agent to present the debt to the borrower for collection. This must be true because the lender would have to communicate with such agent in regard to such debt in any effort he might make to collect the same.

Section 7 of this ordinance compels any person, firm, or corporation desiring to engage in the business of lending money without security to give a bond. Any person who is injured by the violation of the ordinance can sue on this bond. It follows that under the terms of this ordinance any person who pays usury can sue on the bond. As already shown, the general laws of this State have provided the remedy for those who pay usurious interest. It therefore does not lie within the power of a city to provide an additional or different remedy.

■ Section 15 of this ordinance stipulates, in effect, that if any part of it is invalid, such invalid portions shall not affect the balance. We give effect to this provision, and hold that the parts of this ordinance not hereinabove held invalid are valid.

It is ordered that the judgments of the Court of Civil Appeals and the District Court be both reversed, and this cause is remanded to the district court for further proceeding in accordance with this opinion.

Opinion delivered February 15, 1939.

Rehearing overruled March 29, 1939.