EX PARTE EMORY H. HUGHES.

No. 7584. Decided June 7, 1939.
Rehearing overruled July 19, 1939.
(129 S. W., 2d Series, 270.)

506

*Yelderman & Yelderman,* of Austin, for relator.

The trial court was without jurisdiction to enter the contempt order. Berry v. City of Fort Worth, 132 Texas 599, 124 S. W. (2d) 842; Homan v. Mayor of the City of Austin, 34 Texas 668; Watson v. Aiken, 55 Texas 536.

The contempt order against the petitioner is void and of no force and effect in that the subpoena was too general in its nature and so vague and indefinite that it showed that it was merely an attempt to obtain evidence that might incriminate petitioner. Fleishman v. State, 91 S. W. (2d) 493; Sovereign Camp W. O. W. v. Bailey, 183 S. W. 107.

*Gerald C. Mann,* Attorney General, *Benjamin Woodall, Ross Carlton* and *A. S. Rollins,* Assistants Attorney General, *Paul T. Holt,* County Attorney for Travis County, and *Everett L. Looney,* of Austin, for responden.t

The trial court had jurisdiction to issue the contempt order. 24 Tex. Jur. 149, sec. 108; Blair v. Paggi, 282 S. W. 627; Ex parte Warfield, 40 Texas Crim. Rep., 413, 50 S. W. 933; 29 C. J. 96.

*Leonard Brown,* of San Antonio, filed brief as amicus curiae.

MR. JUSTICE CRITZ delivered the opinion of the Court.

The Attorney General of Texas and the County Attorney of Travis County, in their official capacities, are prosecuting a civil suit in the 53rd District Court of such county in the name of the State of Texas against J. Lee Wilson, and numerous other defendants, some natural and others corporate. Emory H. Hughes, relator here, is one of such defendants. The State's petition in the district court is rather lengthy. So far as pertinent to any law question here involved, it alleges, in substance, that the numerous defendants named therein, and each of them, including this relator, are engaged, in Travis County, Texas, in the unlawful business of lending money to numerous persons at usurious and unconscionable rates of

interest. In this regard it is alleged that such defendants, and each of them, are engaged in the business of lending money to numerous persons and parties, and charging and collecting rates of interest therefor, ranging from 120 to 1200 per cent. per annum. It is alleged that these loans usually range in amounts of $100.00 and less. It is also alleged in the petition that when the customers of the defendants, and each of them, fail to pay their loans, including such usurious interest charges, defendants, and each of them, employ methods of collection that are unusual and harsh. In this regard it is alleged that the defendants constantly nag and harass such delinquent borrowers by calling them over the telephone. It is also alleged that the defendants, and each of them, list such delinquent borrowers with a certain credit reporting agency as delinquent borrowers, and thereby injure and destroy their credit. It is further alleged that the acts of the defendants in lending money at rates of interest which are in violation of the Constitution and laws of this State constitute a public nuisance, which ought to be prohibited and enjoined by the district court at the instance and suit of the State. It is further alleged that the defendants, and each of them, have failed to pay certain taxes, but this part of the State's petition has no bearing on this habeas corpus action. Simply stated, so far as pertinent here, the prayer in the district court is for injunction, temporary and permanent, against defendants, and each of them, including this relator, enjoining them, and each of them, from charging or collecting interest at a rate of more than 10 per cent. per annum, and for a receivership to take charge of the assets of each and all of these defendants.

It appears that the district court was conducting a trial on the State's prayer for a temporary injunction. While such trial was in progress, this relator was duly called and sworn as a witness for the State. Relator was then, in open court, asked to produce the records called for by two subpoenas *duces tecum* theretofore issued out of such court and served upon him, said records being "all books, records, documents, papers, memoranda, letters, notes, releases, applications, cards daily reports, and monthly reports respecting transactions that the said Emory Hughes had had with certain persons named in the subpoenas *duces tecum,* the said Emory Hughes being in possession of said records." When asked to produce the above-named records, this relator admitted that both the above-mentioned subpoenas had been served upon him. In spite of this, he declined to produce the same. The court then ruled that relator should produce such records. Relator again

refused. As we understand it, relator was not personally disrespectful to the court. He simply refused to produce such records under the circumstances above detailed. The court then adjudged relator in contempt, and ordered him committed to jail without bail until such time as he shall have purged himself of contempt by consenting, in open court, to produce the records above referred to. Relator was then taken in charge by the Sheriff of Travis County, and confined in jail. He then applied to this Court for a writ of habeas corpus, contending that he was being illegally restrained of his liberty. The writ was granted by us, and relator ordered released on bail, pending our final decision of his application. The habeas corpus case in this Court has been duly submitted, and is now before us for final action.

■■ It is the settled law of this State, and the law generally, that a habeas corpus proceeding to secure release from restraint of a person committed to jail for contempt of court, under a contempt judgment duly entered and the commitment duly issued, is a collateral attack upon such contempt judgment. It is further the settled law of this State that the relator in such habeas corpus proceedings will be refused any relief, unless it appears from the record that the court entering the judgment was without jurisdiction to do so. It follows that in this case in order for us to release relator, we must find that the district court had no jurisdiction to adjudge him in contempt.

As already stated, it appears from the record before us that the Attorney General and the County Attorney of Travis County have filed a suit in the name of the State in the district court of such county against numerous defendants, including this relator, to enjoin such defendants, and each of them, from violating the usury laws of this State by charging and collecting more than 10 per cent. per annum simple interest on any loan or loans heretofore, or hereafter, made by such defendants, and each of them. This relator was adjudged guilty of contempt of court for refusing to produce his books and records concerning his loan business in this county in the trial of such cause in the district court on the State's prayer for temporary injunction. If the Attorney General or County Attorney, or both of them, have the right or power to institute and prosecute such suit in the district court, such court has power or jurisdiction to grant the injunctive relief sought. On the other hand, if neither the Attorney General nor the County Attorney has the right or power to institute and prose-

cute such suit in the district court, it must follow that the district court is without jurisdiction to grant the injunctive relief sought. If the district court was, and is, without jurisdiction to grant the relief sought, it is, and was, without jurisdiction to punish this relator for refusing to produce his books and records on the attempted trial of such injunctive issue.

■ An injunction is a remedial writ which courts issue for the purpose of enforcing their equity jurisdiction. 32 C. J., p. 19. In such cases jurisdiction must exist before the writ can issue.

■ In England chancery courts exercise nonjudicial, as well as judicial, powers; but our equity courts possess only judicial powers. Allred v. Beggs, 125 Texas 584, 84 S. W. (2d) 223.

It is the general rule that a court of equity will not enjoin an act except at the instance of a party interested in the decision. 32 C. J., p. 85.

■ Under our Constitution our government is divided into three co-ordinate branches,—that is, into three distinct departments: the legislative, the executive, and the judicial. No person, or persons, being of one of these departments of government, can exercise any power properly attached to either of the other departments, except where especially authorized by the Constitution itself. Section 1, Article 2, Texas Constitution. From the above it is fundamental that the judicial and executive departments of government are without legislative powers, unless such powers be constitutionally conferred. It is also fundamental that neither the judicial nor the executive branch of the government can create remedies or causes of action.

■ Under our judicial system our courts have such powers and jurisdiction as are defined by our laws, constitutional and statutory. Under our system there is no such thing as the inherent power of a court, "if by that is meant a power which a court may exercise without a law authorizing it." Messner v. Giddings, 65 Texas 301. Of course, jurisdiction is granted by law when it is either directly conferred or ought to be implied from the jurisdiction directly granted. In other words, our courts have such powers and jurisdiction as are directly provided by law, and, in addition thereto, they have such further powers and jurisdiction as are reasonably proper and necessary,—that is, as ought to be inferred, from the powers and jurisdiction directly granted. Generally speaking, we think the above rule applies to every other department of the State

government. They have such powers, and such powers only, as are expressly conferred on them by law, constitutional and statutory, and as ought to be inferred or implied from the powers directly conferred.

■ Our courts of equity, as such, have no jurisdiction to entertain suits to enjoin the commission of acts merely because such acts constitute crimes or penal offenses under penal laws. This is because equity is not concerned with the enforcement of penal or criminal statutes. When the State, through its proper officers, invokes the jurisdiction of a court of equity to abate a nuisance, it must be shown either that the action is directly authorized by some constitutional or statutory law, or that such nuisance is an injury to the property or civil rights of the public at large,—that is, to the public generally. State v. Patterson, 14 Tex. Civ. App. 465, 37 S. W. 478; State ex rel. Shook v. All Texas Racing Assn'n., 128 Texas 384, 97 S. W. (2d) 669; Allred v. Beggs, 125 Texas 584, 84 S. W. (2d) 223; Means v. State, (Tex. Civ. App.), 75 S. W. (2d) 953. There is no contention that any constitutional or statutory law directly authorizes an equity action by the State to enforce our usury laws. Also, there is no law, constitutional or statutory, that defines the violation of such laws as an injury to the property or civil rights of the public at large. To the contrary, as we will later demonstrate, our usury laws very carefully create only private rights.

■ Our Constitution, Section 11, Article 16, provides that all contracts for a greater rate of interest than ten per cent. per annum shall be deemed usurious. This constitutional provision then enjoins upon the Legislature the duty to provide appropriate pains and penalties to prevent the same. It is then provided that when no rate of interest is agreed upon, the rate shall not exceed six per cent. per annum. A reading of the above constitutional provision will disclose that it nowhere attempts to constitute the charging or collecting of usurious interest a nuisance of any kind, much less a public nuisance.

Acting in obedience to Section 11 of Article 16 of our Constitution, supra, the Legislature has passed comprehensive laws regarding usury, and has provided pains, penalties, and remedies. In this connection the Legislature has provided a penalty in favor of the person paying of double the usurious interest paid on any contract. It is also provided that such penalty can be recovered in an action for debt by the person paying, etc., from the person receiving the same. Article 5073, R. C. S. 1925. The Legislature has also provided that

where a contract stipulates for usurious interest, the principal debt shall be valid, but the contract as to interest shall be void. Article 5071, R. C. S. 1925. A careful study of our usury statutes discloses that they make no remote effort to define usury contracts, or the lending of money at usurious rates of interest, as nuisances, either public or private. Such statutes do not even define usury as a criminal offense. All rights, penalties, and remedies defined and provided are carefully and exclusively given to the borrower. No effort is made to award the State any remedy, or to give the State, as such, or the general public any interest whatever in the matter. No effort is made to allow any officer of the State any right or power pertaining to usury. In our opinion, such statutes have provided exclusive pains, penalties, and remedies in usury matters, and neither this nor any other court has power to add to or take from such legislative pains, penalties, and remedies. Berry v. City of Fort Worth, 132 Texas 599, 124 S. W. (2d) 842.

When we come to consider this record, we find that relator was adjudged in contempt of court and deprived of his liberty by confinement in the county jail, because he declined to produce in court his books and records pertaining to his loan business in Austin, Texas. We find, further, that such books and records were demanded by the State for the purpose of showing that relator was conducting the business of lending money at usurious rates of interest. In other words, the validity of the district court's contempt order in this instance depends upon its jurisdiction to entertain the State's suit for injunction against this relator and others joined in the same suit, to prevent him and them from charging or collecting usury from their many borrowing customers. If the court has such jurisdiction, relator should be remanded. If such jurisdiction is lacking, relator must be discharged.

■■ When we come to determine the jurisdiction of the district court to enjoin this relator from collecting usury from private parties or individuals, in a suit brought in the name of the State by the Attorney General and the County Attorney, we find that to uphold such a power would be to violate every rule of law that we have heretofore announced. We have already demonstrated that our usury laws, constitutional and statutory, create no property rights in the State, as such, and furthermore that they create no property or civil rights in the public at large. Such laws do not in any way define usury as a nuisance, either public or private. Such laws do not in any

manner whatever, directly or indirectly, confer any right or power on the State. In this regard, such laws do not even define a penalty payable to the State. The penalty provided is payable exclusively to the borrower. Every right, pain, penalty and remedy defined by our usury laws is a private right, pain, penalty, and remedy, given expressly and exclusively to the borrower who contracts to pay, or who pays, usurious interest. No statute creates, or attempts to create, a public nuisance out of the violation of usury laws, and no statute grants any public officer, or the State, as such, the right or power to institute in our courts legal proceedings to enforce such laws by injunction, or in any other way. For this Court to uphold the power of the State here asserted, would be to hold: (a) that the State can maintain a suit in equity in which it, as such, has no justiciable interest; (b) that this Court can create a remedy in favor of the State that does not exist, either at common law or under any constitutional or statutory provision; thereby taking unto ourselves the right to legislate, in violation of Section 1 of Article II of our Constitution; (c) that our courts possess powers not defined by our laws, express or implied, constitutional or statutory; and (d) that the Attorney General and the County Attorney may institute and maintain suits, in the name of the State, without statutory or constitutional authority to protect purely private rights, in which the State, as such, has no interest, and which involve no injury to the property or civil rights of the public in general.

In State v. Patterson, 14 Tex. Civ. App. 465, 37 S. W. 478, supra, the State, through its district attorney, sought an injunction to prevent a certain party from renting a house to certain other parties for use in conducting a gambling house therein. Also, the petition sought to enjoin such tenants from conducting a gambling house in such premises. The things sought to be enjoined, or at least most of them, constituted criminal offenses under then existing laws. No statute then in force authorized the district attorney to institute or maintain suits to enjoin the transgression of such laws. In passing on the powers of the district attorney to maintain such a suit, the Court of Civil Appeals at San Antonio, speaking through the late Judge Neill, reaffirmed the well-established rule that when the State appears before a judicial tribunal, though such tribunal may be a creature of the State's sovereign authority, still the State appears as a suitor, and not in her capacity as a sovereign. The opinion then further announces the well-established and very just rule that in such suits the

State appears as any other litigant, and can only invoke such power and jurisdiction as she has, by her Constitution and laws, conferred upon the court; for says the opinion: "For courts to recognize her in any other attitude, or draw a distinction in her favor against the humblest individual who appears before them, would be to stultify themselves, and subject their judges to the condemnation of the laws of the State in whose interest they sought to violate them." The opinion then proceeds further to hold that "when a state, through her proper officers, seeks the jurisdiction of a court of equity to abate a public nuisance, she must show that such nuisance is an injury to the property or civil rights of the public at large, which it is her duty, as the agent of the public, to prevent. All the state shows by her bill in this case is the offense of keeping a common gaming house, and the corrupting and vicious influences attending such a nuisance. It is not shown that any property or civil rights of the public which it is her duty to protect are invaded, or that any irreparable injury will be done any such rights by the maintenance of such nuisance." Every word written by Judge Neill, supra, applies with double emphasis to the case before us. In the Patterson case the court had before it an action by the State to enjoin the violation of a criminal statute. In the case at bar not even a criminal statute is involved. All that is involved are laws, constitutional and statutory, which fix and define civil rights between private parties. No property or civil right of the State, or of the public generally, is even remotely involved. For us to uphold the right of the State to maintain this suit, would be to reverse and overrule every rule of law announced in the Patterson case, and open the door for the State to invade the private business affairs of our citizens to an extent that, to our minds, would be intolerable. This must be true, because if it is ever held that the State, without statutory or constitutional authority, can bring her citizens into her courts of equity in matters in which the State, as such, has no interest, and in which the public generally has no property or civil rights, a situation will be produced and a rule of law established that are foreign to the very basic principles of our jurisprudence. The Patterson case is by the Court of Civil Appeals. It never reached this Court. But this Court in State ex rel. Shook v. All Texas Racing Ass'n., supra, cited and expressly approved the rule of the law there announced.

In Berry v. City of Fort Worth, 132 Texas 599, 124 S. W. (2d) 842, supra, this Court had before it a case in which the

City of Forth Worth had attempted to fix pains, penalties, and remedies by city ordinance for usury. We there held, in effect, that the Legislature had, by statute, legislated on such matters, and that it did not lie within the power of the city government to add to or take from the statutory pains, penalties, and remedies provided by the Legislature. The rule of law announced in the Berry case is pertinent here. The Legislature has fixed pains, penalties, and remedies for usury. The Legislature has defined who can invoke such pains, penalties, and remedies, and it does not lie within the power of this, or any other, Court to fix a different remedy from the one fixed by the statute. Especially is this true when the Legislature has seen fit to expressly, and in no uncertain terms, define rights and remedies that are purely personal to borrowers, and that are not public in any sense of the term.

■ If we properly interpret their argument, counsel for the State contend that we should not follow the rule announced in the Patterson case, and other similar cases, in matters pertaining to usury, because the pains, penalties, and remedies provided by the Legislature are not adequate to prevent the violation of our usury laws, and protect unfortunate borrowers who fall into the toils of unscrupulous and unconscionable money lenders. A sufficient answer to such contention is to say that where the Constitution, as in this instance, places a duty on the Legislature, and the Legislature by appropriate laws purports to carry out such constitutional mandate, the Legislature is the sole judge of what is adequate. In such instances it does not lie within the power of the judicial branch of the government to control the legislative will. Furthermore, should it be admitted that the pains, penalties, and remedies provided by the Legislature for usury are inadequate, still that fact would not authorize the State to bring a suit in equity to enforce such law when no law authorizes the same, and neither the State nor the general public has any property or civil right involved.

In Means v. State (Tex. Civ. App.), 75 S. W. (2d) 953, supra, the Court of Civil Appeals at Beaumont had before it a case involving exactly the same question of law as is here involved. In the Means case, the County Attorney of Angelina County, Texas, was attempting to prosecute a civil suit in the name of the State against one Doc Means to enjoin him from violating the usury laws of this State, and from operating as a loan broker without paying certain taxes. The district court granted a temporary injunction enjoining Means from

violating our usury laws. Means appealed to the Court of Civil Appeals at Beaumont. That court reversed the judgment of the district court, and dissolved the temporary injunction. We quote and adopt the following from the opinon by Judge Combs:

"What the evidence does show is that appellant was making small loans of money to laborers at an unconscionable and outrageous interest. It is easy to understand how a chancellor, with a commendable desire to protect the unfortunate victims from such a pernicious practice, would seek to interpose the equitable powers of the court for its suppression. However, under the present state of the law, we do not think that an injunction will lie at the suit of the state to restrain one from merely making loans of his own money at usurious rates of interest. Contracts for the payment of usurious interest are void. The offended individual has his remedy by suit against the lender for recovery of double the amount of the usurious interest paid. See article 5073, R. S. 1925. Whether in the future the state shall be empowered to enjoin the business of money lending at usurious rates of interest under the conditions here shown addresses itself to the sound consideration of the Legislature.

"It follows that the injunction was improvidently granted in this case, and the judgment of the trial court is reversed and the temporary injunction dissolved."

In State ex rel. Shook v. All Texas Racing Ass'n., 128 Texas 384, 97 S. W. (2d) 669, supra, an injunction suit was filed in the name of the State by the district attorney against certain defendants to enjoin them from operating a pari mutuel system of betting on dog races. It was contended by the State that the defendants were guilty of violating a certain criminal statute, and were conducting a common nuisance. The trial court granted a temporary injunction. On appeal, the Court of Civil Appeals at San Antonio, in an opinion by Judge Bickett, reversed the judgment of the trial court, and dissolved the temporary injunction. This Court, in affirming the judgment of the Court of Civil Appeals, used the following language, which is very pertinent here:

"This court is fully conscious of the pernicious and unwholesome effects upon society of betting on dog races, and keeping premises for dog racing where betting is allowed, regardless of the manner in which the wagering is done; but the proper agency for the suppression of these wrongs is the Legislature, and, until it sees proper to further legislate in

the matter, the courts are without power to suppress these evils by injunction.

"We conclude that there is no statutory authority for an injunction in the matter of operating and conducting dog racing, or permitting betting and wagering thereon, upon the premises in question, and for this reason the judgment of the Court of Civil Appeals reversing and remanding the cause is affirmed, and the trial court is directed to dismiss the cause."

■ In Allred v. Beggs, 125 Texas 584, 84 S. W. (2d) 223, supra, this Court had before it a case in which the Attorney General was attempting in the name of the State, to invoke the jurisdiction of a court of equity to enforce a trust created by a will. We there held that the Attorney General may, in the name of the State, invoke the powers of a court of equity to enforce a trust for public charity, which is a charity so public as to be of interest to the entire public, or the public in general. It was conversely held that, unless the trust was of a public character,—that is, such as to be of interest to the entire public, or the public in general, the Attorney General was without power or jurisdiction in the premises. It is true that Allred v. Beggs, supra, involved an action in equity in which the Attorney General was attempting, in the name of the State, to invoke the jurisdiction of a court of equity to enforce a charitable trust which was not a public charity. It was held that no such power existed in the Attorney General. The rule applied by us in the instant case is fundamentally the same as the rule applied in Allred v. Beggs. The rule is: When the sovereignty goes into the courts it has created, it goes, not as the sovereignty, but as any other litigant. Anderson, Clayton & Co. v. State, 122 Texas 530, 62 S. W. (2d) 107. Any other rule would be destructive of our fundamental law which divides the powers of government into three co-ordinate branches, and furthermore any other rule would be contrary to the very basic principles of our judicial sytem. The State can go to court to enforce its own property or civil rights, and the property or civil rights of the public in general. By public in general is meant the entire public, not merely rights of interest to some particular group, even though that group may be of large proportions.

The case just above cited, Anderson, Clayton & Co. v. State, is not a nuisance case, but it is absolutely in point here to show that the rule in this State is, and always has been, that in the absence of some express law to the contrary, when the State invokes the jurisdiction of one of its own courts it does so, not as a sovereignty, but as any other litigant. We quote

the following from Judge Sharp's opinion in the Anderson, Clayton & Co. case:

"The state having invoked the jurisdiction of the district court of Nueces county, a court of competent jurisdiction, for a judicial determination of the question as to whether the defendants were subject to the provisions of the foregoing act and liable for the penalties described therein, it became subject to the same rules as other litigants, except in so far as such rules may be modified in favor of the state by statute or may be inapplicable or unenforceable because of exemptions inherent in sovereignty. State v. Snyder, 66 Tex. 700, 18 S. W. 106; State v. Houston National Bank et al. (Tex. Civ. App.) 259 S. W. 175 (writ of error denied)."

Counsel for the State cite the case of State ex rel. Smith v. McMahon, 128 Kans. 772, 280 Pac. 906, 66 A. L. R. 1072, in support of the power of the State to maintain a suit to enjoin the charging and collecting of usurious interest by persons and corporations engaged in the business of lending money. We have carefully examined that case. We concede that in that case the Kansas Supreme Court in construing certain Kansas usury statutes, in many respects similar to our own, held that an injunction by the State was proper. If we properly interpret the opinion, it bases its holding on the theory that the economic and social conditions of the classes dealing with usurious lenders prevented them from prosecuting suits and obtaining relief at law. In our opinion, the Kansas case is contrary to the long and well-established rules of equity generally, and to the long and well-established rules in this State. In order to follow it, we would have to uproot and reverse many well considered opinions by this Court. This we decline to do.

The State cites the case of State ex rel. Edward J. Goff, County Attorney of Hennepin County, Minnesota, v. R. J. O'Neil, doing business as Metro Loan Company, decided May 26, 1939, 205 Minn. 366, 286 N. W. 316. This case is by the Supreme Court of Minnesota, and the opinion upholds the right or power of the State to prosecute an equity action to enjoin the violation of its usury laws. As we read the opinion, its holding is largely grounded on a Minnesota statute, which, according to the opinion, is "Sec. 10241, Mason Minn. St. 1927, thus: 'A public nuisance is a crime against the order and economy of the State and consists in unlawfully doing an act or omitting to perform a duty, which act or omission—
1. Shall annoy, injure, or endanger the safety, health, comfort, or repose of any considerable number of persons.' " The

Legislature of Texas has never seen fit to put into effect any such drastic or far-reaching statute as the Minnesota statute above indicated, and we do not feel at liberty to create any such law by mere judicial construction.

The State cites the case of In Re Debs, 158 U. S. 564, 39 L. Ed. 1092, 15 Sup. Ct. 900, as authority for upholding the power of the State to invoke the injunction of a court of equity to enjoin the violation of its usury laws. We quote the following from the opening paragraph of Justice Brewer's opinion in the Debs case:

"The case presented by the bill is this: The United States, finding that the interstate transportation of persons and property, as well as the carriage of the mails, is forcibly obstructed, and that a combination and conspiracy exists to subject the control of such transportation to the will of the conspirators, applied to one of their courts, sitting as a court of equity, for an injunction to restrain such obstruction and prevent carrying into effect such conspiracy. Two questions of importance are presented: First. Are the relations of the general government to interstate commerce and the transportation of the mails such as authorize a direct interference to prevent a forcible obstruction thereof? Second. If authority exists, as authority in governmental affairs implies both power and duty, has a court of equity jurisdiction to issue an injunction in aid of the performance of such duty."

We think even a casual reading of the above quotation from the Debs opinion will disclose that the issues of that case are absolutely foreign to the issue of the case out of which the instant proceedings grew. In the Debs case the opinion shows that a conspiracy existed to forcibly and unlawfully obstruct interstate commerce; and, further, to obstruct the transportation of the United States mails. We shall not attempt an exhaustive analysis or discussion of the Debs opinion. It is too long and complicated for us to do so within a reasonable space. Simply stated, however, the Debs opinion holds that the federal government could invoke the equity powers of a federal court to protect interstate commerce, and the transportation of the United States mails, under the facts and circumstances of that case. The Debs opinion is an historic one in the judicial history of this government. Many of the holdings in that opinion have been bitterly assailed by certain groups of our citizens: but, be that as it may, conceding for the purposes of this opinion that it correctly announced

the law as it existed when it was rendered, it is no authority to uphold the power here asserted by the State.

■■ Counsel for the relator contends that he should be discharged because the State's petition in the district court shows upon its face a misjoinder of parties and causes of action. In this regard the State's petition attempts to bring into court, in one action or suit, numerous defendants, who are alleged to be conducting separate and independent loan businesses in the City of Austin. These separate defendants have no connection with each other of any kind. There is no allegation of an acting together or of a conspiracy between such defendants. It is simply alleged, in effect, that each and all of such defendants are engaged in the same kind or character of unlawful business—that of violating our usury laws—and that they are joined in one action to avoid a multiplicity of suits. It is too plain to admit of debate that such a petition shows on its face a misjoinder of parties and causes of action; but that fact alone is not jurisdictional, and therefore would not justify the discharge of this relator in a habeas corpus proceeding.

■ Finally, we wish to say that we fully understand the humanitarian sentiment that moved the District Judge, the Attorney General, and the County Attorney in seeking to interpose the powers of a court of equity to suppress the grievous wrongs that are being committed upon their unfortunate victims by unscrupulous money lenders. In spite of this, the law provides no such remedy at the suit of the State, and for us to create it by judicial construction, would be to exceed our judicial powers, and invade the legislative prerogative. To do that would be to violate the plain mandate of our fundamental law.

Because the District Court was without jurisdiction to enter the contempt order here involved, relator is relieved therefrom, and finally discharged.

Opinion delivered June 7, 1939.

Rehearing overruled July 19, 1939.