**TEXAS FINANCE & THRIFT ASS'N v. STATE.**

No. 14090.

Court of Civil Appeals of Texas. Dallas.

Nov. 4, 1949.

Gabe P. Allen, R. D. Hardy, Roy C. Coffee, and Irion, Cain, Bergman & Hickerson, all of Dallas, for appellant.

Will R. Wilson, Jr., District Attorney, and Philip Silverberg and Tom Reavley, Assistant District Attorneys, all of Dallas, for appellee.

YOUNG, Justice.

The appeal is from an order of February 21, 1949, granting temporary injunction, after a hearing, under authority of Art. 4646b, Vernon's Ann.Civ.St., commonly referred to as the Anti-Usury Injunction Law. In interest of brevity, reference is made to Watts v. Mann, Tex.Civ.App., 187 S.W.2d 917, writ refused, for text of the statute, in which instance it was held constitutional.

As basis for invoking provisions of aforesaid statute, appellee, the State, through Dallas County District Attorney, in petition filed February 2, 1949, alleged five separate violations as related to three individual borrowers, involving (1) the sum of $25, for which loan defendant required a return of $34.50 within 3½ months in six payments of $5.75 each; (2) of $35, for which defendant required a return of $48 over 3½ months in six installments of $8 each; (3) of $10, for which sum defendant required a return of $15 within 2½ months in four payments of $3.75 each; (4) of $25, for which defendant required in return the sum of $34.50 in 3½ months; and (5) of $35, for which defendant required the borrower to repay the sum of $48 in six payments of $8 each within 3½ months.

Although not specifically alleged in the State's petition, the controversy centers around defendant's method of business in that above borrowers were required to pay for life and disability insurance, policies in each case being issued and retained by the company, premiums for which ($3.90 for above $10 loan; $8.10 for each of the

$25 loans; and $11.65 and $11.45 respectively for the two loans of $35 each) were added to the several 90-day notes bearing 10 percent interest from date. In this connection the court found that such "collateral sale or pretended sale by the defendant to borrowers of life, health and accident insurance is actually a subterfuge and scheme for collecting additional interest and consideration from borrowers over and above the ten per centum per annum allowed by law * * *."

Along with their executed notes and statement of borrowers (Regulation Form W), the three complainants, in testimony, recognized their signatures on applications for insurance to City National Life Insurance Company; claiming not to know, or not having any opportunity to read the papers they were required to sign, or that an insurance premium was figured into such transaction. However, one witness, Miss Crotty, testified to seeing a sign "down there that loans are protected by insurance," and that in earlier dealings with defendant she was told that they carried "health and accident insurance, that it paid off in case of death."

L. R. Polan, defendant's supervisor, on the other hand, testified that his company issued and sold life and disability insurance covering its loans and borrowers; he having a license to sell insurance from the State Board and a contract with Credit Life Insurance Agency. He stated that it was not necessarily the office practice to sell insurance with each loan; just not requiring purchase of insurance where "we think it would be a good risk without it"; that borrowers are informed, both personally and by signs in the office, that all loans are insured; that the policy was made out simultaneously with execution of note, copy sent to City National Life Insurance Company, original kept in office; amount of premiums in all cases (and with especial reference to the five transactions in question) being paid over by check to aforesaid insurance company. He further testified

that defendant did not receive anything from either the Credit Life Insurance Agency or City National Life Insurance Company by reason of sale of these policies; that he received a commission from Credit Life Insurance Agency at end of each year for his work in selling their insurance; also a bonus from Texas Finance & Thrift Association covering the same interval, but that no money changed hands between witness and defendant "because of the sale of insurance policies."

M. E. Martindale, Assistant Secretary to the Texas Board of Insurance Commissioners, testified that he had made some investigation of premium rates and charges relative to life, health and accident insurance companies; that the kind of policy in evidence was known as "credit insurance," and at time such policies were written there were no insurance regulations governing their rates; that, in his opinion, premiums charged in the instant cases were high,* a situation which he had found common to other companies (naming them); that subsequently the Department had issued regulations for fixing premium rates on credit insurance, but that so far as he knew the rates charged for insurance in the five instances above mentioned were perfectly legal under the then laws of Texas and regulations of the Department.

This appeal being from an interlocutory order, we must discuss the testimony no further than is necessary to its determination. First, it is to be observed that the notes in question are prima facie lawful, providing for no more than ten percent interest. So also, we think is the requirement for insurance as an additional security to the small lender, provided the plan is not a cover for usurious loans. The latter statement is made in view of section 2a, Art. 4646b, making Art. 342—508, State Banking Code, a part thereof; such Article providing that a bank "may require an applicant for a loan or discount to pay the cost of any abstract, attorney's opinion or title insurance policy, *or other form of*

---

* This witness stated in effect that the premiums attached to these policies were, in his opinion, more than double the maximum amounts reasonably necessary to such coverage.

*insurance* * * * Expenses necessary or proper for the protection of the lender, and actually incurred in connection with the making of the loan may be charged * * * but the charges for such services shall not be deemed a loan fee or interest or compensation for the use of the money loaned * * *." (Emphasis ours.)

In this preliminary hearing the court has condemned defendant's method of business (requirement of credit insurance by borrower) as a scheme or device for collection of usurious interest. In consequence, defendant has been mandatorily required to cease its insurance coverage—constituting not only a change in the status quo, but an accomplishment on part of appellee at this juncture of the sole objective sought by final injunction.

"The law is well settled in this state that the purpose of the issuance of a temporary injunction is to maintain the status quo in regard to the matter in controversy, and not to determine the respective rights of the parties under the cause of action asserted or defenses urged. * * * If the effect of the granting of a temporary injunction does more than preserve the status of the property as it had theretofore existed, and accomplishes the whole object of the suit, it would be improper for the court to grant same, as the legitimate purpose of the temporary injunction is merely to preserve the existing condition until a final hearing can be had on the merits." James v. E. Weinstein & Sons, Tex.Com.App., 12 S.W.2d 959, 961. We recognize the doctrine that, in particular situations (as cited by appellee), the court on temporary injunction may restore a possession unlawfully taken, or require affirmative action in lieu of maintaining the status quo, but the case at bar is not seen as coming within any of the exceptions to above quoted rule. Although, under the present record, there is no direct evidence that appellant was benefited by this demand for insurance except in matter of better security for loans, nevertheless we think an ultimate issue arises from the testimony as a whole, involving defendant's

method of business; i. e., of whether the requirement of insurance was but a cloak for exaction of usury rather than a condition precedent to the making of a bona fide loan. But the burden upon the State of establishing a violation of Art. 4646b, abatable by injunction, was one for trial to the merits and not for determination upon an interlocutory hearing; the trial court, as we have heretofore pointed out, having already accorded appellee the full relief to which it may be ultimately entitled, leaving to a final trial only the matter of its perpetuation. Such, as we view the record, was error.

However, this is not to say that no order was authorized, pendente lite, in maintenance of the status quo. Under all testimony the court was well warranted in issuance of restraint in terms of the statute until final trial on its petition for injunction. An order so worded would not prematurely deprive the finance company of any right recognized by law; it having stoutly denied the commission of acts offensive to the statute; contending, on the other hand, that its method of business was in all respects lawful.

Art. 4646b, V.A.S., authorizes the State "to enjoin," in sec. 2a using the words "in the trial of any application for injunction." In such connection appellant further argues that the statute is quasi penal in character, to which the rule of strict construction would apply; and the article, not providing for issuance of temporary injunction, it was not within the court's province to engraft upon the measure a remedy not expressly authorized by the Legislature. The necessary effect of Art. 4646b is to make the business of habitually lending money on usurious rates a public nuisance; and in kindred articles of Chapter 76, V.A.S., defining nuisances under the legislative wording "to enjoin" or "abate and enjoin", Arts. 4666, 4667, authority of the trial court to grant temporary injunction has not been questioned. See Griffith v. State, Tex.Civ.App., 19 S.W.2d 377; Green v. State, Tex.Civ.App., 49 S.W.2d 519; Thurman v. State, Tex.Civ.

App., 67 S.W.2d 382; Malone v. State, Tex.Civ.App., 77 S.W.2d 335; State v. Robb & Rowley United, Tex.Civ.App., 118 S.W.2d 917. Similarly in Wilkenfeld v. State, Tex.Civ.App., 189 S.W.2d 80, an action based on the present statute.

Ex parte Hughes, 133 Tex. 505, 129 S.W.2d 270 (the Supreme Court decision underlying passage of S.B. 43, Chap. 144, p. 228, Acts 1943 Legislature, now Art. 4646b, Vernon's Annotated Statutes, and mentioned therein by reference), was consequent upon a hearing for temporary injunction sought by the State in a usury case. The Act's emergency clause is strongly worded, reciting in part "* * * that the usury laws of Texas are being flagrantly violated and unconscionable charges are being made by money lenders, * * * that such practice is general in many parts of the State and that the present Statutes of Texas are *inadequate* to afford protection to the public generally against such unlawful and unconscionable practices, * * *." (Emphasis ours.) And that the Legislature, through above language, intended to furnish the courts with an injunctive arm of ample form in dealing with the wrongful practices which it thereby sought to suppress, we have no doubt. The point is overruled.

Lastly, it is our opinion that Rule 682, Texas Rules of Civil Procedure, formerly Art. 4647, R.S., prescribing that petitions for injunction be verified by the applicant, insofar as the requirement is applicable to the subject matter involved in Art. 4646b, V.A.S., has been sufficiently complied with by affidavits of the borrowers; each swearing to correctness of the allegations as to his or her loan. Hood v. State, Tex.Civ.App., 90 S.W.2d 1101.

The order under review is modified to restrain defendant "from demanding, receiving or by the use of any means attempting to collect from the borrower usurious interest on account of any loan, or from thereafter charging any borrower usurious interest, or contracting for any usurious interest" pending the trial for permanent injunction; and as modified is in all respects affirmed.