STATE of Texas, Appellant,

v.

WALKER–TEXAS INVESTMENT
COMPANY et al., Appellees.

No. 13494.

Court of Civil Appeals of Texas.

San Antonio.

May 13, 1959.

Rehearing Denied June 10, 1959.

Will Wilson, Atty. Gen., C. K. Richards, Tom I. McFarling, Asst. Attys. Gen., for appellant.

Louis W. Graves, Jr., John A. Croom, Houston, Head & Lyle, John E. Lyle, Jr., Gerald D. James, Corpus Christi, for appellees.

MURRAY, Chief Justice.

This suit was instituted by Hon. Will Wilson, Attorney General of Texas, in the name of the State of Texas, against Walker-Texas Investment Company, L. C. Smith, and others, acting by virtue of the authority given him under the provisions of Chapter 144, Acts 48th Legislature, 1943, codified as Article 4646b, Vernon's Ann.Civ.Stats., seeking to enjoin the defendants, their officers, agents, servants and employees from demanding, receiving or by the use of any means attempting to collect from those to whom they had loaned money, usurious interest on account of any such loan, or from thereafter charging any borrower usurious interest and contracting for any usurious interest.

The defendants filed pleas in abatement, contending that the Attorney General could not, without the joinder of either the District or County Attorney of Nueces County, bring this suit in the name of the State of Texas, such duty being imposed upon either the District or County Attorney under the provisions of Article 5, Section 21, Texas Constitution, Vernon's Ann.St., reading as follows:

"Sec. 21. A County Attorney, for counties in which there is not a resident Criminal District Attorney, shall be elected by the qualified voters of each county, who shall be commissioned by the Governor, and hold his office for the term of four years. In case of vacancy the Commissioners Court of the county shall have the power to appoint a County Attorney until the next general election. The County Attorneys shall represent the

State in all cases in the District and inferior courts in their respective counties; but if any county shall be included in a district in which there shall be a District Attorney, the respective duties of District Attorneys and County Attorneys shall in such counties be regulated by the Legislature. The Legislature may provide for the election of District Attorneys in such districts, as may be deemed necessary, and make provision for the compensation of District Attorneys and County Attorneys. District Attorneys shall hold office for a term of four years, and until their successors have qualified. As amended Nov. 2, 1954."

Defendants further contended that Art. 4646b is void as being in conflict with said Sec. 21, Art. 5. The trial court sustained these pleas in abatement and dismissed the cause, from which judgment the State of Texas has prosecuted this appeal.

The question presented is the constitutionality and validity of Chapter 144, Acts 48th Legislature, codified as Article 4646b, Vernon's Ann.Civ.Stats., wherein it authorizes the Attorney General to represent the State in the trial courts.

Sec. 22 of Article 4 of the Texas Constitution sets forth the duties of the Attorney General of the State, while Sec. 21 of Art. 5, sets forth the duties of District or County Attorneys.

Speaking generally, it is made the duty of the Attorney General to represent the State in appellate courts, and the duty of the District and County Attorneys to represent the State in the district court and inferior courts. There is no conflict here involved between the duties of a County and a District Attorney, as neither joined in the bringing of this suit. The conflict of duty alleged is between the Attorney General, on the one hand, and the County and District Attorney, on the other hand.

Article 4, § 22, Texas Constitution, reads as follows:

"Sec. 22. The Attorney General shall hold office for two years and until his successor is duly qualified. He shall represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party, and shall especially inquire into the charter rights of all private corporations, and from time to time, in the name of the State, take such action in the courts as may be proper and necessary to prevent any private corporation from exercising any power or demanding or collecting any species of taxes, tolls, freight or wharfage not authorized by law. He shall, whenever sufficient cause exists, seek a judicial forfeiture of such charters, unless otherwise expressly directed by law, and give legal advice in writing to the Governor and other executive officers, when requested by them, and perform such other duties as may be required by law. He shall reside at the seat of government during his continuance in office. He shall receive for his services an annual salary in an amount to be fixed by the Legislature. As amended Nov. 3, 1936; Nov. 2, 1954."

There are a number of cases discussing the right and duty of the Attorney General to represent the State in district courts and inferior courts. One of the early cases is State v. Moore, 57 Tex. 307, wherein Associate Justice Stayton, speaking for the Supreme Court, held that under the Constitution the County Attorney of Travis County had the exclusive right to represent the State in a suit to recover from a defaulting tax collector and his bondsmen, and that the Attorney General had no right or power to interfere with him in the exercise of such exclusive power. What was said by Justice Stayton might well be repeated here:

"This article is broad enough to confer all the power claimed; but it is not believed that it was the intention of the constitution to confer, by the general clause above referred to, power upon the legislature to give to the attorney general power to perform those acts which the constitution itself conferred upon county attorneys; but that it was intended thereby to give the legislature power to confer upon the attorney general such powers as might be deemed necessary in regard to matters which had not been expressly conferred by the constitution upon some other officer. Any other construction would lead to the doctrine. that the constitution had empowered the legislature to alter the constitution itself, without an express grant of such power. Art. 2802a, R.S., grants some powers and imposes some duties upon the attorney general in regard to matters upon which the constitution is silent, and in so far as it does so, there can be no objection to their exercise. The legislature has imposed upon the attorney general many duties in regard to which the constitution says nothing, among which it is made his duty to examine the charters of contemplated railway corporations (Acts 1876, 141); he is made a member of the board to contract for public printing (Acts 1876, 31); he is member of the board to have land for new capital surveyed, sold and capital built (Acts 1879, 9, 111); and many other powers and duties are imposed upon that officer.

"It must be presumed that the constitution, in selecting the depositaries of a given power, unless it be otherwise expressed, intended that the depositary should exercise an exclusive power, with which the legislature could not interfere by appointing some other officer to the exercise of the power. * * *

"The powers granted to county attorneys in reference to representing the state *in all cases in the district and inferior courts* in their respective counties, is broad, and comprehends alike cases civil and criminal, except so far as the constitution itself confers power upon the attorney general to represent the state in those cases.

"If the legislature had attempted to confer power upon a county or district attorney to represent the state in the supreme court, to the exclusion of the attorney general, no one would question its want of power to do so, and this for the sufficient reason that the constitution declares that the attorney general shall represent the state in that court, and the legislature has no power to alter it or evade its commands. * * *

"The constitution does not in express terms make it the duty of the attorney general to represent the state in suits in which it is interested in the court of appeals, but it does not confer that power upon any other officer; hence the legislature had full power to impose, as it has done, that duty upon the attorney general.

"The provision of the constitution which declares that the attorney general, in addition to the duties specifically imposed upon him, shall 'perform such other duties as may be required by law,' is general; that part thereof which declares that 'the county attorneys shall represent the state in all cases in the district and inferior courts in their respective counties' is specific, and under the well settled rule of construction, if there was a conflict, the latter would have to prevail."

We are cited by appellant to Day Land & Cattle Co. v. State, 68 Tex. 526, 4 S.W. 865, as being in conflict with State v. Moore, supra. In the Day case the County Attorney joined with the Attorney Gen-

eral in the presentation of the case, and thus no conflict arose between them. Associate Justice Stayton wrote this case shortly after writing the Moore case and did not even mention the Moore case. Certainly, if he had regarded the Day case as in any way conflicting with the Moore case he would have discussed the matter.

The next case cited by appellant is Brady v. Brooks, 99 Tex. 366, 89 S.W. 1052, 1054. It is contended that if Moore v. State was not overruled by the Day case, it was by this case. It is true that Chief Justice Gaines, in speaking for the Supreme Court, after first contending that the propositions stated in the Moore case were obiter dicta, went on to say: "But, should we be mistaken in this conclusion, we are of opinion, that for reasons hereinafter to be stated, we should decline to follow the decision on the point in question announced in the Moore case." However, after considering the entire opinion, we feel that the important thing in the Brady case is the following concluding sentence: "It follows from what we have said, that we are of the opinion that the Legislature had the power to create causes of action in favor of the state, and to make it the exclusive duty to prosecute such suits." This holding merely stated an exception to the rules laid down in the Moore case, but it did not overrule the holding in the Moore case.

The Moore case has not been regarded as being overruled, through the years. It has been cited with approval many times since Brady v. Brooks, 99 Tex. 366, 89 S. W. 1052. Among the cases citing the Moore case are the following: Shepperd v. Alaniz, Tex.Civ.App., 303 S.W.2d 846; State ex rel. Downs v. Harney, Tex.Civ. App., 164 S.W.2d 55; Garcia v. Laughlin, 155 Tex. 261, 285 S.W.2d 191; State Board of Dental Examiners v. Bickham, Tex.Civ.App., 203 S.W.2d 563; Hill County v. Sheppard, 142 Tex. 358, 178 S.W.2d 261.

In Maud v. Terrell, 109 Tex. 97, 200 S.W. 375, where the validity of a statute authorizing "the Comptroller to appoint and contract with persons to collect inheritance taxes', Laws 1917, c. 166, was involved, Chief Justice Phillips, speaking for the Supreme Court, had this to say:

"If such is the necessary effect of the Act and its provisions in respect to the functions of the person or persons whom the Comptroller is authorized to engage for the services named are not separable, it is condemned by the Constitution. That instrument, by Section 21 of Article 5, lodges with the county attorneys the duty of representing the State in all cases in the district and inferior courts, with the right in the Legislature to regulate by law the respective duties of district and county attorneys where a county is included in a district having a district attorney; and by Section 22 of Article 4 that duty as to suits and pleas in the Supreme Court is confided to the Attorney-General. *With the limitation existing in the authority of the Legislature, under Section 22 of Article 4, to create additional causes of action in favor of the State and intrust their prosecution, whether in the trial or in the appellate courts, solely to the Attorney-General,* the powers thus conferred by the Constitution upon these officials are exclusive. The Legislature cannot devolve them upon others. Nor can it interfere with the right to exercise them. Brady v. Brooks, 99 Tex. 366, 89 S.W. 1052; Harris County v. Stewart, 91 Tex. 133, 41 S.W. 650; State v. International & Great Northern Railway Co., 89 Tex. 562, 35 S.W. 1067." (Emphasis added.)

After reading many decisions on the subject, we think it would be difficult to make a better statement of the rule than the above by Chief Justice Phillips. Thus we think the decision of the case at bar depends upon whether the Legislature in enacting Art. 4646b, created a cause of action in favor of the State and authorized the Attorney General to bring and prosecute such an action in the district and

inferior courts without the necessity of being joined by either the District or County Attorney of the county in which the suit is filed.

It is clear, that before the enactment of Art. 4646b, the State did not have any interest, such as it could assert in the courts, with reference to loan companies charging usurious interest for the loaning of money. This matter was gone into fully by the Supreme Court in Ex parte Hughes, 133 Tex. 505, 129 S.W.2d 270. It was there pointed out that the charging of usurious interest is not made a penal offense. Any penalties prescribed therefor are payable alone to the borrower. Such conduct is not declared to be any kind of a nuisance and certainly not a public nuisance. The State has no property rights and no civil rights of the public are included in such transaction.

As a result of the holding in Ex parte Hughes, supra, the Legislature enacted Art. 4646b. Shortly after this enactment, Walter Watts and twenty-nine other persons brought a suit to have such Act declared unconstitutional, and to enjoin the Attorney General from proceeding against them under its provisions. The trial court rendered a judgment declaring the Act valid, and on appeal to the Austin Court of Appeals the judgment was affirmed in an elaborate opinion by Chief Justice McClendon. Watts v. Mann, 187 S.W.2d 917, 925, writ refused.

What was there said is controlling here:

"We have here a comparatively simple situation. Usury is defined and denounced by the Constitution. Independently, therefore, of the express mandate of the Constitution, the legislature under its general lawmaking powers, is authorized to adopt such measures as it may deem appropriate to prevent, suppress or minimize it; its discretion in that regard being circumscribed only by such inhibitions as are imposed by the Constitution. The effect of the constitutional provision (self-executing in that regard)

was to make 'usury a quasi offense.' Hemphill v. Watson, 60 Tex. 679. Usurers therefore are law violators, guilty of committing a 'quasi offense.' The application of the law to 'habitual' or chronic violators and not to mere casual violators, rests upon a well-recognized legitimate basis of classification of long standing. In the realm of criminal law second and third offenders are often meted out severer punishments than first offenders. We see no reason why a similar rule may not with propriety be applied in the realm of quasi offenses. Especially so, when dealing with purely preventive measures, as is the case here. * * * The real objective of the Act was to break up the practice or business of the habitual usurer—a business recognized by the Act as inimical to the public welfare. * * *

"The third ground of invalidity, above,—that the Act confers jurisdiction on the district court to grant injunctions at the instance of the State to protect purely private rights in violation of Const. Art. 5, Sec. 8—is predicated upon the proposition that since the Act does not create an offense nor expressly characterize the business of the habitual usurer as a nuisance, and since that business is not one which the courts, independently of legislative act, may declare to be a nuisance (Ex parte Hughes, above), the Act operates upon a purely private business in which the public has no interest, and is therefore violative of the stated article. Reliance in support of this ground is chiefly upon the case of Stockwell v. State, 110 Tex. 550, 221 S.W. 932, 12 A.L.R. 1116."

After discussing the above case, Chief Justice McClendon proceeds as follows:

"No analogy between the situation there and that here exists. Here nothing is delegated to the courts or administrative officials. The Act spe-

cifically denounces the business it defines as habitual practice of money lending usury, expressly declares the public interest in the subject, and provides a specific preventive, injunction against its further practice. It is not essential that the Act should have expressly denominated the practice as a nuisance."

The above case, being approved in all things by the Supreme Court, settles the case before us.

Art. 4646b creates a cause of action in favor of the State and authorizes the Attorney General to institute suits in the name of the State to secure injunctions against persons habitually charging usurious interest upon their loans. Such an Act of the Legislature does not violate Sec. 21 of Art. 5 of the Texas Constitution. Brady v. Brooks, supra; Maud v. Terrell, supra.

The judgment of the trial court dismissing the cause is reversed and the cause remanded to the trial court with instructions to overrule the pleas in abatement and restore the case to the docket of the court.

Reversed and remanded with instructions.