**OIL FIELD HAULERS ASSOCIATION, Inc., et al., Petitioners,**

**v.**

**RAILROAD COMMISSION of Texas, et al., Respondents.**

No. A–9780.

Supreme Court of Texas.

June 3, 1964.

Rehearing Denied July 22, 1964.

184

Clark, Thomas, Harris, Denius & Winters, Wallace A. McLean and James H. Keahey, Austin, for Oil Field Haulers Ass'n, Inc., et al.

Joe G. Fender, Houston, for Hill & Hill Truck Line, Inc.

Brooks, Montgomery & Matthews, Dallas, for Chicago, Rock Island & Pacific R. Co. et al.

Waggoner Carr, Atty. Gen., Austin, Norman V. Suarez, Asst. Atty. Gen., Ralph W. Currie, and John J. McKay, Austin, Dallas, for Railroad Commission of Texas et al.

CALVERT, Chief Justice.

This case presents a number of novel procedural questions, jurisdictional and otherwise, which must be resolved before substantive questions are reached.

·The facts and events, shown in the record, which give rise to the procedural questions are as follows:

· Pursuant to a · complaint filed by Lone Star Steel Company, the Railroad Commission entered an order on December 18, 1962, reducing rail "rates on wrought iron or steel pipe, in carloads, intrastate in Texas," the reduction to become effective on January 21, 1963.

On January 18, 1963, Oil Field Haulers, Inc., filed suit in a district court of Travis County against the Railroad Commission and its members seeking to have the order declared invalid and praying for a restraining order, a temporary injunction and a permanent injunction. A restraining order was granted on January 18, and hearing was set on the prayer for temporary injunction for January 28.

On January 25, a number of railroads intervened on the side of plaintiff. On January 28, Hill & Hill Truck Line, Inc., intervened on the side of plaintiff. On January 28, Lone Star Steel Company intervened on the side of defendants. On January 28, the restraining order was extended. On February 7, a trial amendment was filed by Oil Field Haulers joining a number of trucking companies as plaintiffs. All of these plaintiffs will sometimes be referred to as "Haulers." On February 8, a temporary injunction was granted, conditioned on the filing by "plaintiffs" of a bond in the sum of $15,000 "payable to the Defendants." A bond in that sum payable to the Railroad Commission and its members was executed and filed on the same day by the intervening railroads and Oil Field Haulers, Inc., as principals and National Surety Company as surety. It was not executed by any of the trucking companies who had been made plaintiffs by the trial amendment or by Hill & Hill who had intervened.

The Railroad Commission and Lone Star Steel Company both gave notice of appeal, but Lone Star did not file an appeal bond and therefore went out of the case on appeal.

On May 29, 1963, the Court of Civil Appeals reversed the judgment of the trial court and dissolved the temporary injunction. See 369 S.W.2d 931. On June 4, all appellees filed a motion to stay the order of dissolution until they had exhausted their right of review. The motion was granted on June 5, with a short per curiam opinion. See 369 S.W.2d 943. On June 7, Oil Field Haulers and the trucking company plaintiffs

filed a motion for rehearing. On June 13, Hill & Hill and the railroad intervenors filed separate motions for rehearing.

On June 19, the Court of Civil Appeals acted on the motions for rehearing and in connection with its action filed a brief opinion. See 369 S.W.2d 943. In the first part of this opinion the Court simply explained what it meant by certain language in its original opinion. In the last paragraph the Court stated that it should not have dissolved the injunction in so far as it related to shipments of cast iron pipe and to that extent the injunction should remain in force. The Court concluded its opinion with these words: "In the respect indicated, the Motions for Rehearing are granted; in all other respects they are overruled." The order actually entered on June 19, as reflected in the transcript, reads:

"THIS DAY came on to be submitted to the Court the Appellees' Motion for Rehearing, the Motion for Rehearing by Railroad Appellees and the Motion for Rehearing by Appellee Hill & Hill Truck Lines, Inc., Intervenor, in this cause and the Court having heard and fully considered said motions is of the opinion that same should be granted in part and overruled in part, IT IS THEREFORE considered, adjudged and ordered that Appellees' Motions for Rehearing be, and same are hereby granted to the extent that the Injunction insofar as it relates to rates on cast iron pipe shall remain in full force and effect; it is FURTHER ordered that in all other respects the motions are overruled; it is FURTHER ordered that the judgment heretofore entered herein remain in full force and effect except as modified herein."

On July 1, Oil Field Haulers and the trucking company plaintiffs filed an instrument denominated "Appellees' Motion to Reform The Trial Court's Order And Second Motion For Rehearing." By this motion appellees requested the Court of Civil Appeals to reform the trial court's order

granting the temporary injunction to include in it as an additional reason for granting it that the trial was de novo and therefore the Commission's order revising freight rates was suspended. On the last page of the seven-page instrument is this paragraph:

"Having due respect for this Court's time, Appellees will not restate herein the Points of Error set out and discussed in their original Motions for Rehearing; but, to avoid any suggestion as to waiver, Appellees hereby incorporate and reurge each of their Points of Error previously urged."

On July 10, the Court of Civil Appeals overruled this motion with a brief written opinion (see 373 S.W.2d 394) in which it held that the Commission's order was not suspended by the suit even though it was to be tried de novo.

The Railroads did not file an application for writ of error. In fact, they have "switched sides" and by briefs filed in this Court defend the validity of the Commission's order. Hill & Hill filed an application for writ of error on August 8. Oil Field Haulers and the trucking companies filed an application for writ of error on August 7. Both applications were granted.

## PROCEDURAL QUESTIONS

The procedural questions will be indicated and answered separately.

1. *Does this Court have jurisdiction of the application filed by Hill & Hill?* We answer this question "No." A negative answer is clearly compelled by our Rules of Civil Procedure.

■ If the Court of Civil Appeals' order of June 19 be interpreted as *overruling*[1] Hill & Hill's motion for rehearing, it did not file a second motion (if authorized so to do) and did not file its application for

writ of error within the thirty day period prescribed by Rule 468.[2] Filing of the application in the Court of Civil Appeals within thirty days from June 19 was prerequisite to this Court's jurisdiction to consider the application. Gulf Coast Rice Mills v. Orkin Exterminating Co., 162 Tex. 329, 347 S.W.2d 250.

■■ If the Court of Civil Appeals' order of June 19 be treated as *granting* Hill & Hill's motion for rehearing and entering a new judgment, this Court has no jurisdiction of its application because it did not file a new motion and have it overruled and thus lay a necessary predicate for its application. This Court has no jurisdiction of a party's application unless and until a motion for rehearing has been filed in and overruled by the Court of Civil Appeals. Bain Peanut Co. of Texas v. Pinson & Guyger, 119 Tex. 572, 34 S.W.2d 1090; Rule 468.

■ Finally, Hill & Hill cannot take a "free ride" on the Second Motion filed by Haulers even if we have jurisdiction of that application. The situation is analogous to that in which a party attempting to perfect an appeal from a trial court judgment seeks to avail himself of the benefit of another party's motion for new trial. See Angelina County v. McFarland, Tex.Sup., 374 S.W.2d 417, 421; Neuhoff Bros., Packers v. Acosta, 160 Tex. 124, 327 S.W.2d 434.

2. *Does this Court have jurisdiction of the application filed by Haulers and of the points of error contained therein?* We answer the first part of the question "yes." Strict application of the Rules would require a negative answer to the second part, but considering all of the attendant facts and circumstances, we have decided to take jurisdiction of the points.

The correct answer to the first part of the question turns on an interpretation of

---

1. Emphasis ours throughout unless otherwise indicated.

2. All references to Rules are to Texas Rules of Civil Procedure.

certain provisions of Rule 458 and of the Court of Civil Appeals' order of June 19.

Rule 458 provides in pertinent part: "If the Court of Civil Appeals hands down an opinion in connection with the overruling of a motion for rehearing, a further motion for rehearing may, if the losing party deems same necessary, be filed within fifteen days after such opinion is handed down * * *; but a further motion for rehearing shall not be made as a matter of right in any other case." It will be noted that a further motion for rehearing is expressly authorized *only* when an opinion is handed down in connection with the *overruling* of a motion for rehearing.

While the Rule does not expressly so state, a new motion or further motion for rehearing is impliedly *always* required when a prior motion is *granted* and the judgment is vacated and a new judgment is entered. This is so because under the express provisions of Rule 467 this Court may review only *"final* judgments of Courts of Civil Appeals upon writ of error," and a judgment which has been vacated cannot under any circumstances be a *final* judgment. Bain Peanut Co. of Texas v. Pinson & Guyger, 119 Tex. 572, 34 S.W.2d 1090. A motion for rehearing which seeks a change in a judgment which is subsequently vacated, cannot lay a jurisdictional predicate for an application for writ of error.

But the order of June 19 does not purport either to overrule the original motions for rehearing or to grant them; it is a hybrid type of order which purports to overrule the motions in part and grant them in part. There is no provision in the Rules which either expressly or by necessary implication provides for the filing of new or additional motions for rehearing with respect to such an order. If the order be treated as *overruling* the motions for rehearing, Haulers was *authorized* by the quoted provisions of Rule 458 to file a second motion for rehearing *if it deemed one necessary.* If the order be treated as *granting* the motions for rehearing, Haulers was *required* to file a new motion for rehearing. We have concluded that orders of this type must always be treated as *granting* motions for rehearing, thus *requiring* the filing of new motions for rehearing. Having so concluded, it is unnecessary in this case to decide whether in a situation in which a motion for rehearing is *overruled* with written opinion a party may obtain an extension of time for filing application for writ of error by filing a further motion for rehearing when there is nothing in the new writing which could reasonably form a basis for a conclusion that one was deemed necessary.

Our conclusion that the order of June 19 must be treated as granting the motions for rehearing is derived from the fact that it modified the earlier judgment. While the modification in this case was only in a minor particular, modification or changes in judgments on motions for rehearing are often major; and a single rule applicable to all such orders treating them as though they vacate the earlier judgment and re-enter it in its modified form, whether the court expressly so states or not, will be better understood and will provide a more orderly procedure.

The instant order is to be distinguished from one in which a Court of Civil Appeals states that it grants a motion for rehearing, or grants one in part, when it does not vacate, change or modify its earlier judgment, but only substitutes a new opinion, or adds to, or makes changes in its first opinion. In that situation the Court should not state that it *grants* a motion for rehearing, either in whole or in part, for it has not done so; it has *overruled* the motion for rehearing, stating in an opinion in connection therewith new or additional reasons for having done so. This is the precise situation that the 1943 amendment of Rule 458 authorizing second, or further, motions for rehearing was designed to meet. The amendment put in the Rule only what this Court had already declared to be proper

procedure. See Bruni v. Vidaurri, 140 Tex. 138, 166 S.W.2d 81, 85. The amendment also rendered obsolete the holding in Roth v. Murray, 105 Tex. 6, 141 S.W. 515, that a change in an opinion giving new reasons for a judgment will, in justice to the losing party, be treated as granting a motion for rehearing even though the judgment is left undisturbed.

We must still decide whether Haulers' "Motion to Reform The Trial Court's Order And Second Motion for Rehearing" sufficiently complies with the Rules to form a jurisdictional predicate for their points of error in their application for writ of error. We have noticed the contents of the motion earlier in this opinion. That part of the motion which sought a reformation of the trial court's judgment, of which more will be said later, cannot properly be treated as a part of the second motion for rehearing since it does not purport to assign error to any holding made by the Court of Civil Appeals in either its first or second opinion. Other than that, the motion contains nothing but the statement that "Appellees hereby incorporate and reurge each of their Points of Error previously urged."

█ This Court has jurisdiction of an application for writ of error which is properly prepared and timely filed after the overruling of a motion for rehearing in a Court of Civil Appeals, but it has no jurisdiction to consider points of error contained in the application unless the points have been properly preserved in the motion for rehearing. East Texas Motor Freight Lines v. Loftis, 148 Tex. 242, 223 S.W.2d 613, 615–616; Moore v. Dilworth, 142 Tex. 538, 179 S.W.2d 940, 942. Paragraph (c) of Rule 469 requires that points of error in an application shall have been "assigned as error in the motion for rehearing in the Court of Civil Appeals." Rule 458 prescribes the form in which assignments shall be stated in the motion. It is there provided that if a party wishes a rehearing of any matter determined by the Court of Civil Appeals, he shall file a written

motion for rehearing "in which the assignments of error relied upon for the rehearing shall be distinctly specified."

█ Now, obviously, when Haulers simply incorporated assignments appearing in a prior motion into their second motion by reference, they did not *distinctly specify* the assignments relied upon for rehearing. Adoption by reference cannot be allowed as fulfilling the requirement of the Rule. When a first motion for rehearing is granted and the judgment is vacated and re-entered, the first motion becomes *functus officio* and may no more be used for incorporation by adoption or reference than an abandoned pleading may be. When a pleading is superseded by amendment, Rule 58 prohibits adoption of it, or of any part of it, by reference. Moreover, we could not approve "adoption by reference" practice of stating assignments as complying with the Rule even if the first motion were not *functus officio*. When a Court of Civil Appeals hands down an opinion in connection with the overruling of a motion for rehearing and the losing party deems it necessary to file a second motion, the motion should be sufficient in itself to comply with the requirement that *all* assignments relied upon be *distinctly specified*.

█ Adoption by reference is frowned upon in a good many areas of practice. Rule 274 prohibits objection to one part of the charge through adoption by reference of an objection to another part of the charge. In addition, we have held that assignments of error in a motion for new trial which only adopt objections, etc., elsewhere in the record are insufficient. Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887. In the same case we held insufficient a motion for judgment non obstante veredicto which merely recited: "These defendants here adopt, where applicable, as grounds for this Motion, those grounds previously urged upon the Court as set out in their Motion for Instructed Verdict." It is just as important that the practice not be followed in motions for rehearing in Courts

of Civil Appeals. However, inasmuch as this practice in the preparation of motions for rehearing has not been condemned heretofore by Rule or by decision of this Court, we will treat Haulers' second motion for rehearing in this case as though it had copied therein the points or assignments of error appearing in their first motion.

3. *Are the defects in the bond filed by Haulers and others preliminary to issuance of the writ of temporary injunction fatal to an order reinstating the injunction?* We answer this question "No."

▆ It will be recalled that issuance of the temporary injunction was conditioned upon execution by the "plaintiffs" of a bond "payable to the defendants." It will be recalled also that the bond was executed by Oil Field Haulers, Inc., and by the intervening railroads as principals. Respondents assert, in substance, that the bond is no bond at all because the trucking company plaintiffs and intervenor, Hill & Hill, did not sign the bond, the railroad plaintiffs have lost interest in continuance of the temporary injunction, and Oil Field Haulers, Inc., is a corporation in the nature of a trade association with no justiciable interest in the litigation.

In Lancaster v. Lancaster, 155 Tex. 528, 291 S.W.2d 303, 308, we held void a writ of temporary injunction where no bond was required or given; but in Ex parte Coffee, 160 Tex. 224, 328 S.W.2d 283, 292, we held that a defective bond which, upon motion, could have been amended and corrected to afford full protection would support a writ of temporary injunction. The question here is ruled by Coffee. If respondents regard the bond as insufficient for their protection they may yet apply to the trial court to have it made sufficient. We add, however, that the requirement of a bond in this case seems to be nothing more than a penalty since the Railroad Commission and its members, the only obligees in the bond, can hardly suffer injury by virtue of issuance of the writ of injunction. See

Rule 684. Lone Star Steel, which may suffer injury, is not an obligee in the bond.

4. *Does this Court have jurisdiction of Haulers' first point of error asserting that the Court of Civil Appeals erred in holding that the strict de novo appeal of the Commission's rate order did not suspend such order?* We answer this question "No".

Under this point of error Haulers argue that a suit in the nature of an appeal from a Railroad Commission rate order is to be tried de novo, citing Texas & N. O. Ry. Co. v. Railroad Commission, 155 Tex. 323, 286 S.W.2d 112; that when such a suit is filed the order from which the appeal is taken is automatically suspended, citing State, by and through State Board of Morticians v. Cortez, 160 Tex. 532, 333 S.W.2d 839; and that since the rate order was suspended by the filing of the suit, the trial court properly enjoined the Commission from putting the order into effect. Whether this argument is sound or unsound is a matter which we have no jurisdiction to decide—and which the Court of Civil Appeals had no jurisdiction to decide—because the question raised by the point of error was injected into the case too late for consideration.

Rule 683 provides that "Every order granting an injunction * * * shall set forth the *reasons* for its issuance." In Transport Co. of Texas v. Robertson Transports, 152 Tex. 551, 261 S.W.2d 549, 553, we held that this Rule does not require the trial court to set forth the reasons why the court believes the applicant will prevail on final trial, and we said: "We interpret the Rule to require in this respect only that the order set forth the reasons why the court deems it proper to issue the writ to prevent injury to the applicant in the interim; that is, the reasons why the court believes the applicant's probable right will be endangered if the writ does not issue."

In this case the trial court's order went further than required by Rule 683 as interpreted in Robertson Transports. In ad-

dition to reciting reasons why Haulers, et al., would suffer injury if the injunction were not granted, the order recited reasons why Haulers, et al., would probably prevail on final trial.

In its "Motion to Reform The Trial Court's Order and Second Motion For Rehearing" Haulers asked the Court of Civil Appeals to reform the trial court's order to include as a reason for granting the injunction that the appeal was de novo and suspended the Commission's order. The cases cited to the Court of Civil Appeals as authorizing the requested action should be analyzed.

In City of San Antonio v. State, Tex.Civ. App., 195 S.W.2d 421, no writ, the court reformed the *decretal* part of a permanent injunction. The same type of reformation was ordered by the Austin Court of Civil Appeals in Texas State Federation of Labor v. Brown & Root, 246 S.W.2d 938, N.R.E., and in Texas Finance & Thrift Assn. v. State, 224 S.W.2d 522, no writ, by the Dallas Court of Civil Appeals. In the only other cited case, O'Daniel v. Libal, Tex.Civ.App., 196 S.W.2d 211, no writ, no reformation was ordered by the Court of Civil Appeals; the trial court had itself reformed its order to include "reasons." These cases do not support the reformation asked in this case; it is one thing to narrow or expand the decretal part of an injunctive order, but something else to reform the trial court's findings of "probable right."

In spite of the fact that there appears to have been no sound basis for Haulers' motion, the Court of Civil Appeals wrote the new opinion of July 10, in which it passed on the *merits* of the question and held that although the appeal was de novo it did not suspend the Commission's order. On that basis the motion was overruled. Perhaps the Court thought that while it could not reform the trial court's order, it could nevertheless uphold the injunction on the ground suggested if it were sound.

In their general attack on this Court's jurisdiction respondents suggest that the motion was a novel one, and they state: "Not only was this a theory not presented to the Court of Civil Appeals on original submission; it was also a theory wholly at variance with the theory on which the temporary injunction was obtained from the trial court." The record supports respondents' statement.

 Obviously what Haulers was trying to do by its motion was to get another "reason" of "probable right" into the trial court's order, put there by the Court of Civil Appeals. It was not entitled to have that done. Neither was it entitled to assert in the appellate courts for the first time a new ground for the granting of the injunction which had not been asserted in its pleading or presented to the trial court. That a plaintiff may not sustain a favorable judgment on an unpleaded cause of action, in the absence of trial by consent, is the general rule, see State v. J. M. Huber Corporation, 145 Tex. 517, 199 S.W.2d 501; and the general rule has correctly been held applicable to judgments denying injunctive relief. Hayden v. City of Houston, Tex.Civ.App., 305 S.W.2d 798, 804, writ refused, N.R.E. It is equally applicable to judgments granting injunctive relief.

Having disposed of the procedural questions raised and having thus narrowed to some extent the questions which may be considered in disposing of the appeal, we come to a consideration of

## THE CASE ON ITS MERITS.

 The only ultimate question before the Court of Civil Appeals and before this Court is whether the trial court abused its discretion in granting a temporary injunction to prevent enforcement of the Commission's rate order until the case can be tried on the prayer for permanent injunction. Texas Foundries v. International Moulders & F. Wkrs., 151 Tex. 239, 248 S.W.2d 460, 462. There was no abuse of discretion in

the issuance of the writ if Haulers pleaded and offered evidence tending to prove a cause of action, that is, a probable right to a permanent injunction and a probable injury. Southwestern Greyhound Lines, Inc. v. Railroad Commission, 128 Tex. 560, 99 S.W.2d 263, 109 A.L.R. 1235; Transport Co. of Texas v. Robertson Transports, 152 Tex. 551, 261 S.W.2d 549, 552. The Court of Civil Appeals found that the evidence adduced on the hearing established probable injury, but held that as a matter of law Haulers did not and could not show a probable right to a permanent injunction. We disagree; and, accordingly, we reverse the judgment of the Court of Civil Appeals and reinstate the temporary injunction.

Haulers' application for writ of error contains six points of error. The first point asserts that the Court of Civil Appeals erred in holding that the Commission's order was not suspended by the filing of Haulers' suit. We have held in our discussion of procedural matters that this question was not properly before the Court of Civil Appeals and is not properly before this Court for determination. With that problem put aside, we have only to decide whether any one of the other points presents a legal basis for the granting of a permanent injunction and whether the evidence adduced tends to establish Haulers' right thereto.

■ We have concluded that the sixth point presents a legal basis for the trial court's finding of probable right. The point asserts, in effect, that the Commission's order may be declared invalid because of the hurtful effect of the prescribed rates on competing carriers and on the needs of commerce in this State. The Court of Civil Appeals held that the order cannot be declared invalid if the prescribed rates are fairly compensatory to the railroads, even if enforcement of the order should result in financial ruin of competing carriers.

That Court put its thinking in these words (369 S.W.2d 941–942):

"It is our opinion that their [motor carriers] right to avoid these injuries, *or even their right of survival,* must be viewed from the standpoint of public interest, free enterprise, and our competitive economic system. * * * We believe that the injuries to be sustained by appellee motor carriers represent the price they must pay for their confessed inability to be competitive in this area."

We do not share that view of the controlling law. While we can agree that Haulers' right of survival must be viewed from the standpoint of public interest, we are unable to agree that under governing regulatory legislation the public interest turns alone on low rates for one segment of the transportation industry.

Power to adopt, prescribe and change rates to be charged by railroads was first conferred on the Railroad Commission by an Act of the Legislature passed in 1891 creating the Commission. See Gammel's Laws of Texas, vol. 10, p. 57. The Legislature was not concerned at that time with the effect that regulated or unregulated rail rates might have on intrastate carrier competition. It was concerned, rather, with protecting passengers and shippers against exorbitant and discriminatory charges. Heavy duties were laid upon the Commission to prevent those practices and heavy penalties were prescribed for failure of the railroads to comply with Commission orders and regulations. Provision was made for an appeal to the courts by "any railroad company or other party at interest" dissatisfied with a Commission order, and the burden was placed on the plaintiff in the trial of any such suit to show that the rates, orders, etc., complained of were "unreasonable and unjust to it or them." The appeal provisions of the Act remain in substantially the same form today, and are to be found in Articles 6453 and 6454.[3]

3. All Article references are to Vernon's Texas Civil Statutes.

By the end of the first quarter of the twentieth century, motor vehicle transportation of both passengers and freight, unregulated either in its use of public roads or in passenger fares and freight charges, had begun to clog the highways, posing at the same time a threat of destructive competition to railroads. State regulation of motor vehicle transportation began with enactment by the Legislature in 1927 of a law regulating motor-bus transportation of passengers on the public highways. See Acts 1927, 40th Leg., ch. 270, p. 399. It continued with enactment by the Legislature in 1929 of a law regulating motor carriers transporting property over public highways. See Acts 1929, 41st Leg., ch. 314, p. 698. These acts as subsequently amended now appear in our statutes as Articles 911a and 911b.

From the beginning these regulatory acts have conferred upon the Railroad Commission authority to adopt and prescribe passenger fares and freight charges as well as authority to limit the number and type of vehicles using the highways through a system of certificates and permits. When the Act of 1929 regulating motor carriers transporting property was largely rewritten in 1931, it included a declaration of public policy, now shown as Sec. 22b of Art. 911b, which reads in part as follows:

"* * * * *The rapid increase of motor carrier traffic,* and the fact that under existing law many motor trucks are not effectively regulated, have increased the dangers and hazards on public highways and *make it imperative that more stringent regulation should be employed, to the end * * * * that* the use of the highways for the transportation of property for hire may be restricted to the extent required by the necessity of the general public, and *that the various transportation agencies of the State may be adjusted and correlated* so that public highways may serve the best interest of the general public."

In 1940 the Austin Court of Civil Appeals decided Texas & P. Ry. Co. v. Railroad Commission, 138 S.W.2d 927. The primary question in the case was whether an applicant was required to establish public convenience and necessity to obtain a special commodity permit. The applicant claimed a right to the permit without making that proof, and, incidentally, claimed a right to charge such rates as he saw fit. After an elaborate analysis of the statute, the Court concluded that its primary purpose was to preserve the highways and to protect the public in their use, but added (138 S.W.2d 931):

"The Act in question clearly discloses the additional purposes of preserving other established lines of transportation, and even though a public need be shown for additional operation, a further studied effort is shown to prevent, through regulation, unfair, discriminatory, or destructive competition between such authorized carriers as would ultimately impair their usefulness."

After the case reached this Court by application for writ of error, the applicable statute was amended by Acts 1941, 47th Leg., ch. 442, p. 713 to require expressly that applicants for specialized motor carrier certificates establish public convenience and necessity. This Court reversed the judgments of the lower courts and dismissed the suit for mootness. Railroad Commission of Texas v. Texas & P. Ry. Co., 138 Tex. 148, 157 S.W.2d 622.

The act of 1941, supra, now a part of Art. 911b, prohibits the Commission from granting a certificate authorizing operation of a "Specialized Motor Carrier" unless it is established "(1) that the services and facilities of the existing carriers serving the territory or any part thereof are inadequate; (2) that there exists a public necessity for such service, and (3) the public convenience will be promoted by granting said application." See Art. 911b, Sec. 5a.(d). Section 1 of the Act makes a

legislative "Declaration of Policy." A part of the declaration reads:

"It is hereby declared to be the policy of the Legislature to * * * provide regulation for all common carriers, without unjust discriminations, undue preferences or advantages, unfair or destructive competitive practices; improve the relations between and coordinate transportation by the regulation of such motor carriers [specialized motor carriers] and other common carriers; preserve the common carriers serving the public in the transportation of commodities generally over regular routes; develop and preserve a complete transportation system properly adapted to the needs of the commerce of this State and of the National Defense Program."

A suggestion in an amicus curiae brief of The Texas Railroad Association that the declaration of public policy cannot be given effect because not adequately expressed in the bill's caption is unsound. The declaration is but a statement of the Legislature's reasons for, or purposes in, enactment of the statute. Sec. 35, Art. 3 of the Constitution, Vernon's Ann.St., does not require that the Legislature's "reasons" or "purposes" be expressed in the title of a bill; it requires only that the "subject" of the bill be expressed therein. Cf. Oklahoma Light & P. Co. v. Corporation Commission, 96 Okl. 19, 220 P. 54, and see 50 Am.Jur. 157, Statutes, § 177.

In 1946 the Supreme Court of the United States decided Steele v. General Mills, 329 U.S. 433, 67 S.Ct. 439, 91 L.Ed. 402. Basically the case involved the right of a contract carrier to recover from a shipper the difference between their contract rate for transportation services and the rate prescribed by the Railroad Commission. Incidentally, the shipper contended that the Commission was not authorized by Art. 911b to prescribe rates for contract carriers. The Supreme Court recognized the opinion of the Court of Civil Appeals in Texas & P. Ry. Co. v. Railroad Commission, supra, as correctly reflecting the law of Texas with reference to the Commission's authority to prescribe rates, and said (329 U.S. 440, 67 S.Ct. 443, 91 L.Ed. 408):

"The Texas motor carrier legislation was designed to be a part of a state transportation regulatory system applicable alike to all lines of transportation which represents a 'studied effort * * * to prevent, through regulation, unfair, discriminatory, or destructive competition between such authorized carriers as would ultimately impair their usefulness.' Texas & P. R. Co. v. Railroad Commission, Tex. Civ.App., 138 S.W.2d 927, 930, 931 rev'd on other grounds, 138 Tex. 148, 157 S.W.2d 622. Cf. Stephenson v. Binford, 287 U.S. 251, 272–273, 53 S.Ct. 181, 187, 77 L.Ed. 288 [298, 299], 87 A.L.R. 721."

■ The foregoing brief review of legislative enactments and judicial pronouncements renders inescapable the conclusion that the statutes authorizing regulation of carriers of goods and property in this State have broader objectives than merely providing a particular or limited service to the public at the lowest possible cost. They have objectives also of providing transportation services to all segments of business and industry where such services are necessary and of protecting those services against unfair and destructive practices, thus developing and preserving "a complete transportation system adapted to the needs of commerce of this State." These objectives cannot be attained if rates prescribed for one segment of the transportation industry for part of a total service, even though fairly compensatory to that segment, are so low as to destroy another segment of the industry which is necessary to performance of the total service in meeting the needs of commerce.

■ Haulers hold specialized motor carrier certificates. Those applying for

such certificates are under a heavy and strict burden of establishing a public necessity for their services, and the Commission must make full and complete findings of fact showing public necessity or an order granting an application is void. See Art. 911b, Sec. 5a(d); Thompson v. Railroad Commission, 150 Tex. 307, 240 S.W.2d 759. It would be paradoxical to say that the Commission is authorized to put in a transportation service, demanded by public necessity, with its right hand and to destroy it with its left, and that both acts are in the public interest. We therefore hold that Haulers are parties "at interest" within the meaning of Art. 6453 authorizing appeals from orders of the Commission prescribing and adopting rail freight rates, and that they may enjoin enforcement of prescribed rates if they can discharge the burden placed on them by Art. 6454 of showing that the rates are unjust and unreasonable to them in that there is a reasonable likelihood that their businesses and their services, for which there is a· public necessity, will be destroyed or substantially curtailed. We are not persuaded to a contrary conclusion by the opinions in Thompson v. Railroad Commission, Tex. Civ.App., 232 S.W.2d 139, reversed on other grounds, 150 Tex. 307, 240 S.W.2d 759, and Texas Motor Coaches v. Railroad Commission, Tex.Civ.App., 59 S.W.2d 923, affirmed, 123 Tex. 517, 73 S.W.2d 511, cited by the Court of Civil Appeals. Both cases involved matters to be considered by the Commission in the granting of certificates. Neither involved rate-making destruction of a service theretofore found to be a public necessity.

The parties and amici curiae cite many decisions of courts of other states, of United States District Courts and Courts of Appeal, and of the Supreme Court of the United States construing other and different legislative regulatory enactments. None of the enactments are shown to be similar in content or purpose to Texas statutes. It would serve no good purpose to analyze and distinguish them further.

The only question which remains is whether Haulers pleaded and adduced evidence tending to prove its probable right to a permanent injunction. Its pleading contains the following allegations:

"The Order of December 18, 1962, would impose rail pipe rates which would be discriminatory against plaintiff and its members. If put into effect, it will cut the rail rates on pipe to such an extent that the oil field carriers will no longer be competitive. As a result, plaintiff and its members will not participate in the transportation of pipe between any two points in Texas which can be served by railroad. And not only will the Order of December 18, 1962 have the effect of diverting intrastate shipments of pipe to the rail carriers, but it will also divert interstate ex-barge traffic to intrastate rail routes. The long-haul transportation of pipe is a main source of revenue to plaintiff and its members, and the Railroad Commission erred in ignoring the disastrous effect that its Order of December 18, 1962, will have on the oil field carriers of this State."

The trial court tried the right to a temporary injunction upon the sworn pleadings and affidavits. The affidavit of Edgar P. Hardin, a witness for Haulers, states:

"If the rates prescribed by the Commission in the order of December 18, 1962, become effective, the over-the-road pipe traffic, now being handled by oilfield carriers will be diverted almost entirely to the railroads. The order of December 18, 1962, cuts the rail pipe rates so greatly that oilfield carriers will be unable to compete for the transportation of pipe between points and areas in Texas * * * As an example of severe rate cutting, note the comparison at 300 miles: At the present time the rail rates are only 3½¢ per Cwt. below those of the oilfield carriers; under the order of December

18, 1962, they would be 28¢ per Cwt. below the oilfield carrier rates. The oilfield carriers cannot compete under such conditions.

"* * *; the net effect of the Commission's order will be to reduce oilfield carriers to short-haul field operators insofar as pipe traffic is concerned. As a result, the oilfield carriers of Texas will be deprived of a substantial portion of the revenue upon which they now depend."

The affidavit then summarized reports from 14 carriers for the year 1962 showing total revenue of $8,463,164.00, of which pipe shipments provided $1,658,213.00, and that the pipe shipment revenue would have been reduced 19.6% by the Commission's order. The affidavit also referred to attached exhibits and continued:

"* * * As is indicated in these Exhibits, the financial condition of the oilfield carrier industry is now extremely precarious; the reduction in traffic and revenue which unquestionably will result from the order of December 18, 1962, would be disastrous to this industry."

Other affidavits were presented, but we need not examine them as we regard the affidavit just quoted as tending to prove that the businesses and services provided by Haulers will be destroyed, and thus as satisfying the requirement of showing a probable right to a permanent injunction.

It must be remembered that one is not required to prove that he will prevail on final trial in order to invoke the trial court's discretion to grant a temporary injunction. Transport Co. of Texas v. Robertson Transports, 152 Tex. 551, 261 S.W.2d 549, 552. Some of the crucial factual statements in Haulers' pleading and in the affidavit are somewhat in the nature of conclusions, but we regard them as sufficient to support the trial court's order in the absence of special exception and objection.

In conclusion, it will perhaps be well to state what we have *not* held. We have not held that a permanent injunction should issue if the evidence on final trial establishes merely that Haulers will suffer some loss of profits or revenue if the Commission's order is enforced.

Our order granting Hill & Hill's application for writ of error is set aside and the application is dismissed for want of jurisdiction.

The judgment of the Court of Civil Appeals is reversed and the temporary injunction granted by the trial court is reinstated.

SMITH, CULVER and NORVELL, JJ., concurring in the result.

## ON MOTION FOR REHEARING

CALVERT, Chief Justice.

In their motion for rehearing respondents state that they are having difficulty in interpreting our opinion and that they are particularly troubled by the following sentence:

"We therefore hold that Haulers are parties 'at interest' within the meaning of Art. 6453 authorizing appeals from orders of the Commission prescribing and adopting rail freight rates, and that they may enjoin enforcement of prescribed rates if they can discharge the burden placed on them by Art. 6454 of showing that the rates are unjust and unreasonable to them in that there is a reasonable likelihood that their businesses and their services, for which there is a public necessity, will be destroyed or substantially curtailed."

Respondents interpret the sentence in this language:

"It seems plain enough that the Court holds that if the plaintiffs can convince the jury that 'their businesses and services' will be destroyed or substantially curtailed (as distinguished from 'some loss of profits or revenues') they will

have established, as a matter of law, that the rates under attack are unjust and unreasonable to them. Such rates must be set aside regardless of any other factor."

In their reconstruction of the sentence, respondents omit the modifying phrase "for which there is a public necessity." The language of the sentence was chosen with care, and to omit the modifying phrase not only does violence to the wording of the sentence but completely distorts its meaning.

The sentence is to be interpreted as written and not as respondents have rewritten it. Moreover, it should be read in context with the remainder of the opinion wherein these statements appear: "The point [petitioners' sixth point of error] asserts * * that the Commission's order *may be* declared invalid because of the hurtful effect of the prescribed rates on competing carriers *and on the needs of commerce in this State.* * * * While we can agree that Haulers' right of survival must be viewed from the standpoint of *public interest,* we are unable to agree that under governing regulatory legislation the public interest turns *alone* on low rates for one segment of the transportation industry. * * * They [statutes authorizing regulation of carriers] have objectives also of providing transportation services to all segments of business and industry *where such services are necessary* and of protecting those services against unfair and destructive practices, thus developing and preserving '*a complete transportation system adapted to the needs of commerce of this State.*' These objectives cannot be attained if rates prescribed for one segment of the transportation industry for part of a total service, even though fairly compensatory to that segment, *are so low as to destroy another segment of the industry which is necessary to performance of the total service in meeting the needs of commerce.*"

Haulers had the burden of showing a "probable right" to a permanent injunction. The statements quoted above from our opinion were made for the purpose of showing a *legal basis* for Haulers' "probable right," as is pointed out in the opinion. The net effect of the criticized sentence is that there is a *legal basis* upon which Haulers *may* obtain a permanent injunction against enforcement of the prescribed rates. We then held that the affidavit of the witness Hardin *tended to prove* a factual basis for a permanent injunction within the requirements of governing authorities cited in our opinion. All of the requirements for invoking the trial court's discretion to grant the temporary injunction were thus established: (1) a legal basis for granting a permanent injunction; (2) evidence tending to show that Haulers could prove a factual basis therefor, and (3) admitted probable injury in the interim if the temporary injunction were not granted.

Respondents' motion for rehearing is overruled. A further motion for rehearing will not be entertained.