**MISSOURI PACIFIC RAILROAD COM-
PANY, Appellant,**

**v.**

**RAILROAD COMMISSION of Texas et al.,
Appellees.**

**No. 11353.**

Court of Civil Appeals of Texas.

Austin.

Jan. 5, 1966.

Rehearing Denied Jan. 26, 1966.

William R. McDowell, Tom M. Lawty, Dallas, for appellant.

Waggoner Carr, Atty. Gen., Hawthorne Phillips, T. B. Wright, Sam Kelley, Asst. Attys. Gen., Clark, Thomas, Harris, Denius & Winters, James H. Keahey, Austin, for appellees.

ARCHER, Chief Justice.

This is an appeal from a summary judgment sustaining the Railroad Commission's Order No. 13639–R.

A joint motion for summary judgment by the defendants Railroad Commission of Texas, Carling Brewing Company, Crown Cork & Seal Company, Inc., and Carter Foundation Production Company was made, and hearing set, reply having been made.

The Order of the Commission is as follows:

"RAILROAD COMMISSION OF TEXAS
TRANSPORTATION RATE SECTION
RAILROAD FREIGHT CIRCULAR NO. 27309

DOCKET NO. 13639–R  SWITCHING LIMITS OF MISSOURI PACIFIC R.R. AT FORT WORTH, To extend to include Carling Brewing Co. and Carter Foundation Production Co., and to establish terminal switching charge to apply between said locations and interchange with other railroads in Fort Worth switching limits.

Austin, Texas, June 12, 1964.

The above cause involves an application filed by Missouri Pacific Railroad Company (hereinafter referred to as MP) for authority to extend their switching limits at Fort Worth as governing in connection with road-haul service, to include Carter Industrial Park and the plant of Carling Brewing Company under construction, and Carter Foundation Production Company, the latter being a development of some 2200 acres, a portion of which at least is being developed for industrial purposes. The application to extend the switching limits carried with it establishment of switching charge of $25.00 on cars handled by MP between Carter Park and interchange connections with other railroads in Fort Worth to be absorbed by said other railroads on shipments they handle in road-haul service.

From the present switching limits of MP at Fort Worth to the turn-out into Carter Park is 6.25 miles, and from the turn-out to the plant of Carling Brewing Company is 3 miles, involving an extension of 9.25 miles.

The reciprocal (terminal) switching charge in connection with road-haul shipments at Fort Worth is generally $15.83 per car. To justify a charge of $25.00 per car on cars switched between the Carter Park location and interchange connections with other lines in Fort Worth, on road-haul traffic, MP presented what is purported to be costs of performing the service for 60,000 pound and 70,000 pound net loads, for which the out-of-pocket costs were shown to be $24.25 and 24.46, and fully distributed costs $33.11 and $34.80, respectively.

Under the proposal the $25.00 charge would be absorbed by the other Fort Worth lines on shipments to or from Carter Park in road-haul service to points on their lines beyond Fort Worth. The shippers or receivers of freight at Carter Park would not be called upon to pay the $25.00 charge.

The Carter Park location is a new industrial area being developed by Carter Foundation Production Company, and Carling Brewing Company is erecting a brewery in that location. Crown Cork and Seal Company is constructing, or intend constructing, a plant in Carter Park; and it is the purpose to locate other industries at the location.

Carter Park Production Company, Carling Brewing Company and Crown Cork and Seal Company, along with the Fort Worth Chamber of Commerce and the Fort Worth Freight Bureau desire to have the Carter Park location placed in the switching limits so that it may be accorded reciprocal (terminal) switching the same as other industries in Fort Worth, and have negotiated with MP in an effort to accomplish that purpose. These interests, however, generally opposed the $25.00 charge. Carling fears that if the other Fort Worth railroads have to absorb $25.00 on cars to or from their plant, compared with $15.83 charge generally applicable between other locations in Fort Worth, such railroads might be reluctant to furnish the needed cars which in turn might result in some additional expense to them. Carter Foundation Production Company desires that the switching to and from Carter Park location be handled at the same charge, whatever it may be, that applies between other locations in Fort Worth. The Fort Worth Chamber of Commerce and Fort Worth Freight Bureau opposed the $25.00 charge because they fear it might be a deterrent in their efforts to locate other industries in Carter Park at Fort Worth but would not oppose it if it would not adversely affect their ability to do so. The interest of all of these parties seems to be to have the same switching charge to or from Carter Park as applies generally between other locations in Fort Worth, some of which they believe involve distances as great if not greater than the distance to and from Carter Park.

There is an intervening area between Carter Park and the present switching limits which the application of MP herein does not specifically ask to be included in the switching limits. To extend the switching limits to Carter Park, however, while maintaining the intermediate locations, at which there is some industry, separately and subject to rates based on distance therefrom, would have the effect in some instances of maintaining higher rates for the shorter than for the longer distances, which should be avoided.

We are of opinion and find that the application to extend the switching limits of MP at Fort Worth to include the Carter Park location and industries therein or to be located therein, should be approved; and further, that the extension of the switching limits should be made to include also the area intermediate between the turn-out into Carter Park and the present switching limits, thereby placing the line of MP between Carter Park and the present switching limits, in the Fort Worth switching limits.

We are further of opinion and find that as long as the general reciprocal (terminal) switching charge at Fort Worth is $15.83, the said charge should be made to apply also between the Carter Park location and the intermediate area, on the one-hand, and interchange connections with other railroads in Fort Worth, on the other hand, on shipments they may handle to or from points on their lines; the said switching charge to be subject to the current switching absorption rule.

Public hearing having been held in the above numbered and entitled cause, pursuant to notice duly given, and the evidence there presented having been considered, and having entered above herein our opinion and findings, which opinion and findings are made a part of this order, it is ordered by the Railroad Commission of Texas that the road-haul switching limits of the Missouri Pacific Railroad Company at Fort Worth, Texas, be extended to the extent provided in our said findings above herein and to be subject to reciprocal (terminal) switching charge and current switching absorption rules, as provided in our said findings.

It is further ordered that our order herein, and the tariff amendments to be based thereon, shall become effective five days after publication by Missouri Pacific Railroad Company, but not later than July 15, 1964.

RAILROAD COMMISSION OF TEXAS

/s/ By     Ben Ramsey
Chairman

(SEAL)      /s/

               J. C. Langdon
Commissioners"

---

A reconsideration of said Order was had and the petition of the plaintiff was denied.

An order granting defendants' motion for summary judgment was granted and reads:

"On the 9th day of April, 1965, came on to be heard the Joint Motion for Summary Judgment of the Defendants, the Railroad Commission of Texas and its members and Carling Brewing Company, Crown Cork & Seal Company, Inc., and Carter Foundation Production Company, pursuant to Rule 166–A, T.R.C.P. It appearing to the Court that due notice had been given and that all parties appeared through counsel of record and announced ready, the Court proceeded to consider the pleadings, evidence and arguments of

counsel on said Motion for Summary Judgment. The Court is of the opinion that there are no material fact issues in this case and that Defendants are entitled to judgment as a matter of law; it is therefore

ORDERED, ADJUDGED and DECREED that Plaintiff take nothing by this suit at its cost. To which action of the Court Plaintiff Missouri Pacific Railroad Company in open court duly excepted and gave notice of appeal to the Court of Civil Appeals for the Third Supreme Judicial District at Austin, Texas.

SIGNED, RENDERED and ENTERED this 16th day of April, 1965.

/s/                    Herman Jones
JUDGE HERMAN JONES"

There is only one point in this case and it is that the trial court erred in granting defendants' motion for summary judgment.

Appellant contends that the switching rate had prescribed an unreasonable and unjust charge and cite Article 6453, V.A.C.S. as a basis to enjoin the Order and allege that the rate of $15.83 fixed is $8.42 below out-of-pocket cost of providing the service and $18.28 below the fully distributed cost, and the revenue derived from switching Carter Industrial Park over appellant's railroad under the charge prescribed does not yield sufficient revenue to pay for the cost of transporting it, and is unreasonable and unjust.

Appellant cites Railroad Commission v. Oil Field Haulers Ass'n., Tex.Civ.App., 369 S.W.2d 931 for the statement at p. 941 that "if the rates here are compensatory * * then it is not possible for them to be unreasonable or unjust * * *"

The above case was reversed by the Supreme Court in 381 S.W.2d 183.

For the purposes of their joint motion for summary judgment appellees did not contest the factual allegations set out in appellant's Paragraph IV of the First Amended Original Petition which sets out its application to extend its switching limits and to establish a charge of $25.00 per car and other allegations, but say that the allegations do not support a legal conclusion as set out in Paragraph V of the Petition and do not state a cause of action. Paragraph V alleges that the order is unreasonable and not supported by substantial evidence.

At the hearing before the Commission Carling, Crown Cork & Seal, the Carter Foundation and the Fort Worth Chamber of Commerce urged the Commission to include the Carter Industrial Park within the Fort Worth switching area at the area-wide charge of $15.83.

■ Under Article 6448, V.A.C.S., the Commission has the duty to "adopt all necessary rates, charges and regulations, to govern and regulate freight and passenger traffic" and is not restricted to considering applications on a "take it or leave it" basis, but may, on its own motion, if necessary, act.

Halbouty v. Railroad Commission, 163 Tex. 417, 357 S.W.2d 364.

Mr. C. R. McNamee, Rate Director for the Commission, in an affidavit attached to the motion for summary judgment, stated as follows:

"THE STATE OF TEXAS  ⎤
COUNTY OF TRAVIS    ⎬
                    ⎦

BEFORE ME, the undersigned authority, a Notary Public in and for Travis County, Texas, on this day personally appeared C. R. McNamee, who by me duly sworn states on oath:

My name is C. R. McNamee and I live in Austin, Texas. I am the Transportation Rate Director of the Railroad Commission of Texas. As such it is my duty to hear applications, complaints and other matters relating to rates on freight moving intrastate between points in Texas by rail. It is also my duty among other

things, to hear testimony presented in hearings before the Commission, and to make recommendations to the Commission for its consideration. I also have the general duty, among other things, of preparing the orders of the Commission, for the signatures of the Commissioners, after the Commission has reached its decision and instructed as to substance of the things which are to go into the order. I have been with the Railroad Commission 43 years.

Attached hereto as Exhibit 1 and made a part hereof for all purposes is a true and correct copy of the Commission's Railroad Freight Circular 26742, Notice of Hearing in Docket No. 13,639-R. I held such hearing as the Commission's Rate Director on July 16, 1963. At the outset of the hearing, counsel for the Missouri Pacific Railroad Company, Mr. M. D. Sampels, attempted to present the application on a package basis—that the Commission could either grant both the switching limits extension and the $25.00 charge or deny them both. I drew his attention to the notice and stated that the Commission could grant or deny either or both or fix the switching charge at any amount it found proper under the evidence. He then asked for and I granted a short recess to allow him to discuss the matter with the Missouri Pacific's home office in St. Louis, Missouri. After the recess, he returned and stated:

'Therefore, even in light of the fact that the Railroad Commission of Texas saw fit to broaden the issues in this proceeding so as to consider any charge that it determines just and reasonable, the Missouri Pacific wishes to go forward in this proceeding, and prove by competent evidence that a charge of $25.00 per car is fully justified and should be approved by the Commission at the same time that it places the Carter Industrial Area within the Fort Worth switching limits.'

The general reciprocal (terminal) switching charge at Fort Worth is $15.83. Such charge has been fixed by the Commission for eight other railroads serving Fort Worth as well as for the Missouri Pacific. Such charge has been in effect for the Fort Worth area since December 9, 1958, and, so far as I know, has never been attacked in court as unjust or unreasonable.

Attached hereto as Exhibit 2 is a true and correct copy of Railroad Freight Circular 27309, the Commission's Order in Docket No. 13639-R.

The facts set forth in this affidavit are within my personal knowledge, and I am competent to testify to them.

/s/   C. R. McNamee
_____
C. R. McNAMEE

SUBSCRIBED AND SWORN TO BEFORE ME by the said C. R. McNAMEE this 10th day of March, 1965, to certify which witness my hand and seal of office.

/s/          Mary Ferguson
_____
Notary Public in and for
Travis County, Texas''

■ The Commission heard the statements and the above affidavit and had access and knowledge of its records and could take notice thereof, and the parties were given full opportunity to show that at the time the order was entered there did, or did not, then exist sufficient facts to justify the entry of the same. Cook Drilling Co. v. Gulf Oil Corp., 139 Tex. 80, 161 S.W.2d 1035.

The area-wide rate as fixed is compensatory for the area as a whole.

The judgment of the trial court is affirmed.

Affirmed.